Strafford,
Feb. 7. 1905.

## Stevens *v.* United Gas & Electric Co.

When assumption of risk is urged as a ground for a nonsuit in an action for negligence against an employer, it must appear, either directly or by necessary inference from the evidence and the uniform experience of mankind, that fair-minded men would find, without any reasonable probability of differing in their views, either that the plaintiff knew and appreciated the danger, or that ordinarily prudent persons under the same circumstances would readily acquire such knowledge and appreciation; and this result must follow after the evidence has received a construction most favorable to the plaintiff.

One who maintains upon his premises a line of defectively insulated wires charged with an electric current of high voltage is bound to exercise reasonable care for the protection of his invitees who are exposed to contact therewith.

The servants of an independent contractor are deemed to be upon the premises of the proprietor by his implied invitation ; and he is bound to exercise reasonable care to protect them from dangers arising from the condition of the premises, of which he is aware and concerning which they have neither actual nor constructive knowledge.

An ordinary laborer who understands that defectively insulated wires near which he is at work form part of an electric lighting system, but who has no knowledge that the line is used for the transmission of a current of high voltage during the hours of his employment, is not chargeable as a matter of law with an assumption of the risk of injury from contact therewith.

If the servant of an independent contractor suffers injury from defectively insulated electric wires negligently maintained by the proprietor of the premises, the latter cannot escape liability on the ground that a staging provided by the contractor and in use by his servant at the time of the accident was not necessary for the prosecution of the work, when it appears that the structure was such as is commonly employed in the erection of similar buildings, and a reasonable construction of the contract warrants the conclusion that the use of such an appliance was contemplated by the parties, in the absence of any stipulation to the contrary.

The fact that an independent contractor has knowledge of a peculiar, concealed danger incident to the execution of work upon the premises of the proprietor does not absolve the latter from a performance of the non-delegable duty to exercise reasonable precautions for the protection of the former's servants.

The circumstances under which an accident happened may warrant a finding of due care on the part of a person injured, in the absence of any evidence tending to prove his negligence.

A verdict will not be set aside because of erroneous instructions when it is apparent from the whole charge that the jury were not misled thereby.

CASE, for negligence.   Trial by jury and verdict for the plaintiff.   Transferred from the February term, 1904, of the superior court by *Chamberlin,* J.

The plaintiff's evidence tended to prove the following facts: On January 8, 1903, the plaintiff was employed by one Frost, an independent contractor, upon the construction of a power-house for the defendants, located upon the easterly side of Cocheco street in Dover.   The brick walls of the building had been carried up about twenty feet from the ground at the northeast corner, and at that point an outside staging had been erected which was about seventeen feet from the ground.  The staging also extended around the building and was five feet wide.   Along the street side of the building the defendants maintained upon their land an electric light line, consisting of poles, wires, and cross-arms, which ran obliquely with the wall of the building and was

nearest the building at the northeast corner, at which point the distance in a straight line from the wall to the nearest electric wire was from five feet, three and a half inches, to five feet, five inches. There were two electric light wires attached to a cross-arm upon a pole which stood some sixteen feet from the corner. These wires were on the side of the pole farthest from the power-house, and were in a place about four feet above the floor of the staging. The distance between the wires was from ten to twelve inches. The staging-post at the northeast corner extended above the floor of the staging, and was within two inches of the nearest electric light wire. The floor of the staging extended out to the post. There were other smaller wires strung below the electric light wires and supported by the same poles.

The morning of January 8, 1903, was cold and frosty. During the preceding night there had been a light fall of snow. The plaintiff began work that morning by sweeping the snow from the upper staging, and may have performed this work at the north-east corner. The snow and ice were not entirely removed, so that the staging was more or less slippery. After finishing this work he was directed to take boards which were to be handed up to him from the ground and place them on the staging at the east end. This work was done at such places as he and his associates selected. The boards were passed up to him under the wires at a point on the street side of the staging near the corner. After he had carried away five or six boards he was returning for another, and had reached the corner of the building, some five and a half feet from the corner of the staging. This, he testified, was the last thing he remembered until he regained consciousness in the hospital. His injuries were wholly the result of his hands coming in contact with the defendants' wires at the northeast corner of the staging, upon which there was an electric current of 3,120 volts. After contact with the wires he fell to the ground. The wires had been insulated, but at the time of the accident, and for quite a period before, the insulation was worn off, and near the corner of the staging the wires were bare in places. The accident happened at about half-past eight o'clock.

A fellow-workman of the plaintiff testified that just before the accident he was upon the staging and saw the plaintiff standing very near the edge of the staging at the northeast corner, looking down, as though waiting for a board to be passed up. The witness then testified: " I came right from that way right straight down the run, and when I got to the foot of the run I saw him when he dropped down on the ground." The run referred to was an inclined walk extending from the staging and along the side of it to the ground. The witness stated that it was in the neigh-

borhood of five minutes after he saw the plaintiff standing at the corner before he saw him falling, and that he fell off the east end of the staging.  Miss Arnott testified that she saw the accident; that " the first thing I saw was some one fall against the wires, throw out their arms, and then he fell to the ground "; that there was a blaze from the wires; that the man remained there a minute or two, and then fell to the ground; and that he fell off the easterly end near the corner, head first.  On cross-examination, she testified that she saw him falling before he touched the wires, and that he threw up his hands and then fell.  Another witness testified that he saw the plaintiff hanging on the wires with his feet down.  There was no other direct evidence of how the accident occurred.

The plaintiff testified that before the accident he had seen the wires near the staging post; that he knew the wires were uncovered in places near the corner, and that a live wire was dangerous; that he could not tell by looking at the wires whether the current was on or not; that he did not know whether the current was on that morning or not, but understood the wires were used for electric lighting purposes, and did not know they were dangerous at the time.

The defendants offered no evidence, but submitted motions for a nonsuit and for a verdict in their favor, which were denied subject to exception.  The defendants also excepted to the refusal of the court to charge the jury according to their requests and to parts of the charge as given.

*James A. Edgerly, George E. Cochrane, Walter W. Scott,* and *William S. Mathews,* for the plaintiff.

*Leslie P. Snow, John Kivel,* and *Orville D. Baker* (of Maine), for the defendants.

WALKER, J.  One ground of defence is that the plaintiff assumed the danger of coming in contact with the defectively insulated wires charged with a high voltage of electricity, while he was engaged in his work near the northeast corner of the building; that if he did assume that danger as a matter of law, it is unnecessary, and perhaps illogical, to inquire whether the defendant was negligent in maintaining at that point, at the time of the accident, the wires so charged with electricity, or whether the plaintiff was in the exercise of due care.  It may be conceded that if the plaintiff knew and appreciated the danger of his situation, or, in the absence of actual, affirmative knowledge upon that subject, if the ordinarily prudent man would have had such knowledge, he

cannot recover, however reprehensible the defendant's conduct may have been, and however careful he may have been under the circumstances. It is the general rule that every one who voluntarily takes a particular position assumes the risk of all danger incident to remaining there of which he either knows, or would know if he used ordinary care. *Miner* v. *Railroad*, 153 Mass. 398. By this is only intended that he assumes the risk of all dangers of the situation that are apparent to his observation; for he does not assume a risk when for any reason he could not be expected to apprehend it. *Demars* v. *Company*, 67 N. H. 404, 406. The defendant claims that the principles of law thus expressed in general language are applicable to the facts of this case, and establish the proposition that the plaintiff voluntarily and knowingly incurred the risk of coming in contact with the charged wires while working near them. In this view, the manner in which the accident occurred, or the degree of care exercised either by the defendant or by the plaintiff, is immaterial. *Thomas* v. *Quartermaine*, 18 Q. B. Div. 685; *Fitzgerald* v. *Paper Co.*, 155 Mass. 155, 158. In short, the doctrine invoked is the one often expressed or indicated by the maxim, *Volenti non fit injuria.*

But when this defence is urged as a ground for a nonsuit or for a verdict for the defendant, as it is in this case, it must appear that reasonable men, acting as the triers of the fact, would find, without any reasonable probability of differing in their views, either that the plaintiff knew and appreciated the danger, or that ordinarily prudent men under the same circumstances would readily acquire such knowledge and appreciation. The fact of actual or constructive knowledge on the part of the plaintiff must appear, either directly or by necessary inference from the evidence and the uniform experience of men, before the court can order a nonsuit or direct a verdict upon this ground. And this result must follow after the evidence has received a construction most favorable to the plaintiff. *Hardy* v. *Railroad*, 68 N. H. 523, 536. The essential question, therefore, upon this branch of the case is whether the evidence warranted the jury in finding that the plaintiff did not assume the risk.

The plaintiff, who was about twenty years old, was an ordinary laborer about the building. He had had but little experience with the practical operation of electricity. It appeared that he had for a short time run a saw propelled by electricity for sawing wood, and that he had then been told not to touch the wires. He understood that the wires near where he was at work were used to transmit electricity for lighting purposes; he knew that the insulation was worn off from them and was hanging down in places, and that a live wire was dangerous; but he did not know whether the cur-

rent was on that morning or not, or whether the wires were then dangerous to touch or not.    He had received no instructions upon these points.    Did he have, or is he chargeable with having, such information in regard to the actual danger he encountered as would preclude the inference, as a reasonable deduction, that he did not voluntarily or willingly assent to the risk occasioned by the high voltage of electricity upon the wires at the time of the accident? Could reasonable men honestly entertain that opinion?    It is to be observed that the accident occurred between half-past eight and nine o'clock in the morning.    There is no .evidence that these wires were used for any other purpose than that of furnishing light, or that the plaintiff had any reason to suppose that they served any other purpose.    Nor can the court say that it is a general custom for electric lighting companies to keep their wires fully charged in the daytime, so that no prudent man could work near such wires in the daytime without knowing of and appreciating the fact that they might be charged.    As a matter of fact, it does not appear that the defendant was in the habit of keeping the current on during the daytime; nor does it appear for what purpose it was on at the time of the accident.    The plaintiff had no knowledge that the defendant was operating its line, or that there was any occasion for operating it, at nine o'clock in the morning. He testified that he did not know that at that time it was dangerous.    Whether a prudent man might be justified in believing that the current was not on, under the circumstances, is a question which may be open to reasonable doubt, and which, therefore, cannot be determined by the court.

But it is urged that the plaintiff knew that the current was liable to be on; and that as he could not know as a fact whether it was or not without coming in contact with the wires, he is chargeable with knowledge that it was on.    This amounts to saying that a person is charged with knowledge of a danger which may or may not exist, although the apparent probabilities are that it does not exist; that he acts at his peril when his movements are governed by what is probable, rather than by what is possible. Some reasonable men in the plaintiff's situation might say it was very probable that the current would not be on at that hour, although there was a possibility that it might be.    Other reasonable men might entertain the opposite view.    To say, as a matter of law, that the plaintiff under such circumstances could only justify his conduct by adopting the absolutely safe course, would be to hold that reasonable men would never act in such a situation upon probable and reasonable deductions.    It is certain that if the plaintiff had refused to work near the wires because there was a possibility that they were charged, he would not have been

injured. The perfectly safe course was for him to keep away from the wires; but that does not prove that he is chargeable with knowledge of the dangerous condition of the wires and appreciated the actual situation, or that he assumed the risk, if reasonable men, acting upon the probabilities, might have concluded that the current was off. This presents a question of fact determinable by the jury. The plaintiff did not assume the risk as a matter of law; and it was, therefore, competent for the jury to find that he did not assume it as a matter of fact.

This result leads logically to the inquiry whether the defendant was guilty of a breach of its duty to the plaintiff at the time of the accident; that is, whether the evidence warranted the jury in finding that it was. If the plaintiff assumed the risk of coming in contact with the charged and uninsulated wires, the defendant was not culpably negligent as to the plaintiff in maintaining its wires in that condition of danger; otherwise, it may have been. In considering this question it is important to have a clear idea of the defendant's act which, it is claimed, and which the jury may have found, constituted a breach of its legal duty to the plaintiff. The mere fact that the wires were in close proximity to the staging upon which the plaintiff was rightfully standing is liable to divert attention from the essential act on the defendant's part which is the basis of the plaintiff's case. The wires when in a normal condition, or when not used for the transmission of electricity, were harmless. It was only when they were charged with a certain voltage of that imponderable, silent, and hidden force that the situation of one near them became perilous; and especially so when the insulation was imperfect. The alleged negligence of the defendant consisted in maintaining, or sending, or having upon the wires not properly insulated at the time of the accident a current of electricity sufficient in intensity to cause serious physical injury to one merely touching them, or standing in close proximity to them. The result to be apprehended from such a state of facts was known to the defendant's agents, and to some extent to the plaintiff. The defendant was therefore chargeable with knowledge that a man at work on the staging, who should for any reason touch the uncovered wires, would receive severe and perhaps fatal injuries from the transmission of the electric current through his body. From this knowledge of the situation, a legal duty was imposed upon the defendant toward one so exposed, upon its invitation, to use at least ordinary care to protect him from such harm. Poll. Torts 490; *True* v. *Creamery*, 72 N. H. 154, 156; *Heaven* v. *Pender*, 11 Q. B. Div. 503, 510, 515. The question therefore arises whether it performed that duty.

But it is claimed that the defendant did not know, and is not

chargeable with knowledge, that the contractor, who had the
entire charge of constructing the building, would build an outside
staging five feet in width, extending at the northeast corner to
within two or three inches of its wires; that such an appliance in
erecting such a building is unnecessary, since the men could work
as well from an inside staging; that the premises it furnished to
the contractor, or the work it authorized him to do, did not neces-
sarily involve the danger of personal injury from an electric shock;
that if there was negligence in the way the work was being done,
it was the negligence of the contractor, for which it is not liable.
This argument seems to be based upon the assumption that, as a
matter of law, if it was possible for the contractor to erect the
building without the use of outside stagings, or without exposing
the laborers to the liability of coming in contact with its wires, it
is not liable in this action. There is no evidence of the terms of
the contract. The case was tried upon the mutual understanding
that the man who had charge of the work was an independent
contractor. It does not appear that the defendant imposed any
conditions upon him with reference to its electric line. But, in
general, whether a dangerous situation will arise as a matter of
strict necessity from the work which the contractor engages to do,
is not the test by which to determine the landowner's liability
therefor. The correct principle is that the landowner is responsi-
ble to invitees upon the premises, who suffer injuries from a nui-
sance created on his land, when that result was reasonably to be
apprehended from the usual and ordinary method of doing the
work contracted for. In *Thomas* v. *Harrington,* 72 N. H. 45, the
contractor agreed, among other things, to put in a water-pipe to
connect with a water-main in the highway, and it was there said:
" That the parties had in mind the excavation of a ditch in the
highway, is not open to doubt upon a reasonable construction of
the contract. It was a necessary and anticipated part of the work
which the defendants employed McFadden to do. . . . In
such a case, one cannot avoid responsibility for the consequences
naturally to be apprehended in the course of the performance of
the work, by employing another to do the work as an independent
contractor." If upon a reasonable construction of the contract,
under which the defendant employed the contractor to build a
brick block of the character of the one actually in part con-
structed, the parties intended and understood that an outside
staging five feet in width was to be built, the defendant has no
ground for insisting that it did not authorize, as a reasonably nec-
essary part of the work, the erection of such a staging. *Samuel* v.
*Novak,* 99 Md. 558. That an outside staging of that width is
a convenient means employed in erecting a brick structure, is a

matter of common knowledge, which sufficiently justifies the inference that the defendant understood that it would be employed by its contractor in erecting its new power-house. The fact of danger necessarily inherent in the work does not fix the limit of the employer's liability for resulting injuries; in other words, it affords no excuse for him to show that it was possible for the contractor to do the work in a safer manner, if the method adopted was contemplated by or known to him, upon a reasonable construction of the contract. *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 526, 527; Cool. Torts 547. The fact that, in this case, it was possible to construct the walls of the power-house without the aid of an outside staging, or to adopt some other arrangement that would prevent the laborers from getting in close proximity to the electric wires, does not alone absolve the defendant from liability, since it was competent for the jury to find that the use of an outside staging, five feet in width, around the building, was a reasonable and usual means for the construction of brick buildings, and that the defendant presumably understood such a staging would be used by its contractor, in the absence of any special contractual provision to the contrary. Moreover, this inference is strengthened by the fact that the wires at the corner in question were both upon the outside arm of the pole, or on the street side of the pole, which has some tendency to show that the defendant had moved them to that position to give room for the staging, and therefore that it had actual knowledge of the proposed structure on the outside of the building. It is also probable, from the fact that the building had been in process of erection for some weeks and outside stagings had been built as the work progressed, that the defendant, through its proper agents, knew that the staging in question had been built and that the men were at work upon it near its line of wires. This is a practical ratification, equivalent to a prior authorization, of the contractor's act of building the staging. Upon any view of the evidence, it was competent for the jury to find that it had such knowledge, and hence that it authorized the construction of the staging upon its premises, which in connection with the wires, when charged, constituted a concealed danger to men working in that place. *Brannock* v. *Elmore,* 114 Mo. 55, 63.

The defendant's argument upon this point also proceeds upon the assumption that the contractor had full knowledge of the danger to be apprehended from constructing and using an outside staging at the northeast corner; and the conclusion of law is predicated upon it, that the plaintiff's injury, if the legal result of any one's negligence, was alone due to the negligence of the contractor. If it is conceded that this assumption of fact is correct, it does

not follow that the defendant owed no duty to the plaintiff with reference to the condition of the premises which it suffered to exist. The plaintiff was not a trespasser or a mere licensee in his relation to the defendant. He was not there upon his own business alone, or for personal pleasure. He was there at the request of the defendant and for the immediate benefit and advantage of the defendant. *Plummer* v. *Dill*, 156 Mass. 426. The fact that he was a servant of the contractor in the performance of the work did not relieve the defendant from the performance of any duty it owed him as an invitee. There is no necessary inconsistency in holding that, with reference to the contractor, he was in a legal sense his servant, and with reference to the defendant he was its invitee. Presumably, he was a reasonably intelligent and prudent man for the work he was employed to do. There is no evidence to the contrary. To say the least, he was such a man as the defendant authorized by the contract to come upon its premises for the purpose of working upon the staging. A simple warning to him of the concealed danger incident to his work near the charged wires would have doubtless prevented the accident. Whether, if he had been an imbecile, the defendant would have had the right, as against the contractor, to exclude him from the premises, is a question that need not now be considered. Perhaps in such a case it would be unreasonable to hold that he was the defendant's invitee.

" Roundly stated," the rule is, " that the relation of master and servant does not subsist between the proprietor and the servant of the contractor; and therefore those obligations which the law imposes upon the master for the protection of one injured while in his service do not rest upon the proprietor, but upon the contractor. On the other hand, the servant of the contractor must be deemed to be upon the premises of the proprietor by his invitation, express or implied; and therefore he owes him the same duty of guarding him against the consequences of hidden dangers on the premises, that a proprietor would in any case owe to a guest, a customer, or other person coming by invitation upon his premises." 1 Thomp. Com. Neg., *s.* 680. The same author also says (*s.* 979): " It is not necessary to suggest that where a proprietor engages an independent contractor to do work upon his premises, the contractor, while executing the work, will be there in pursuance of the invitation of the proprietor, and the proprietor will . . . be under the duty of exercising ordinary or reasonable care, to the end of promoting his safety. In almost every such case there is the further implication, that if the contractor brings third persons, his own employees, his partners, or assistants, to assist him in executing the contract, such persons are pre-

sumably upon the premises by the invitation of the owner, and he owes to them the same measure of care, to the end of promoting their safety, that he owes to the contractor himself,—and this, although no contractual relation exists between the proprietor and them." See, also, *Coughtry* v. *Company*, 56 N. Y. 124; *John Spry Lumber Co.* v. *Duggan*, 80 Ill. App. 394, 398; *Johnson* v. *Spear*, 76 Mich. 139, 143; *Brannock* v. *Elmore*, 114 Mo. 55; *Holmes* v. *Railway*, L. R. 4 Exch. 254; Beach Cont. Neg., *s.* 51.

If the defendant had actually employed the plaintiff to work upon the staging it authorized to be built around its building, in the absence of an assumption of the risk by the plaintiff it would have been its duty to exercise reasonable care in some way to protect him, while observing due care, from incurring the danger of coming in contact with the charged wires. But there is no sound reason why it is not under a similar legal obligation when the plaintiff is by implication its invitee, instead of its servant. Being its invitee, the plaintiff had a right to rely upon the defendant's performance of this duty, and to assume that the defendant would not expose him, while attending to the work of constructing its building, to great and serious dangers connected with the premises, of which he had no knowledge and of which he was not chargeable with knowledge, but which were well known to the defendant. " Every man who expressly or by implication invites others to come upon his premises assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of, and of which they are not aware. This is a very just and very familiar principle." *Cooley*, J., in *Samuelson* v. *Mining Co.*, 49 Mich. 164, 170; *True* v. *Creamery*, 72 N. H. 154, 156; *Bright* v. *Company*, 88 Wis. 299, 306; *Bennett* v. *Railroad*, 102 U. S. 577.

The assumed fact that the contractor knew of the peculiar danger connected with the plaintiff's situation is immaterial. The duty imposed by law upon the defendant, as the owner and occupier of the premises, for the reasonable protection of its invitee, is not performed by an attempted delegation of it to a third party. It is a non-delegable duty, arising from the proprietor's control of the premises (*Woodman* v. *Railroad*, 149 Mass. 335, 340); and " where the duty sought to be enforced is one imposed by law upon the defendant, he cannot escape liability by showing that he employed another, over whom he had no control, to perform it for him." *Pittsfield etc. Co.* v. *Shoe Co.*, 71 N. H. 522, 530. " He may bargain with the contractor that he shall perform the duty, and stipulate for an indemnity from him if it is not performed, but he cannot thereby relieve himself from liability to those injured by the failure to perform it." *Dalton* v. *Angus*, 6 App. Cas. 740,

829; *Rolfe* v. *Railroad,* 69 N. H. 476; *Cabot* v. *Kingman,* 166 Mass. 403, 406; *Engel* v. *Eureka Club,* 137 N. Y. 100, 104; 1 Shearm. & Red. Neg., *s.* 176; Cool. Torts 547. Suppose the fact appeared that Frost knew at the time the contract was made that the defendant proposed to maintain upon the wires a dangerous current of electricity: upon what ground could it be held that the defendant was thereby absolved from its duty of care toward those whom it in effect invited to work upon its premises in close proximity to the point of danger? Or suppose Frost had agreed with the defendant to warn his men of the danger, and had failed to do so: it is plain that that fact would afford the defendant no justification for its failure to perform its duty to the plaintiff. Frost's knowledge is as immaterial upon the question of the defendant's performance of its duty to the plaintiff, as it would be if it owed him no duty.

It is said that the relation existing between the parties does not differ from that of a landlord and his tenant's guest or sub-tenant, where by the terms of the lease the tenant enters into full control of the premises. But if, in the absence of an express contract, the landlord is under no obligation to his tenant, or to one occupying the premises in the right of the tenant, to keep them in a proper sanitary condition (*Towne* v. *Thompson,* 68 N. H. 317), the attempted application of that principle to this case fails, (1) because the defendant did not give the exclusive possession of the premises, including its line of wires, to the contractor as to a tenant, and (2) because the plaintiff was present, not upon the invitation of the contractor alone and for his benefit alone, but upon the implied invitation of the defendant and in the prosecution of its special business. In short, the defendant's contract with Frost was not a contract of leasing by which the latter acquired the exclusive possession of the premises, and hence the argument by analogy is clearly fallacious. See *Looney* v. *McLean,* 129 Mass. 33, 35; *Learoyd* v. *Godfrey,* 138 Mass. 315: *Gordon* v. *Cummings,* 152 Mass. 513; *Phillips* v. *Company,* 55 N. J. Law 307.

In *Mulchey* v. *Society,* 125 Mass. 487, the defendant employed one Needham as an independent contractor to paint the ceiling of its church, having already had a staging for that purpose built by other parties. By reason of the defective construction of the staging, the plaintiff, who was an employee of the contractor, was injured; and in holding the defendant liable the court say (*p.* 489) that the society "had accepted and used the staging, and had in effect invited and induced Needham and his workmen to come upon it to paint the church, and was liable to any of them who suffered injury from the dangerous condition of the staging which

was not apparent to them and which was caused by negligence in its construction." If it is said that in that case the defendant furnished the defective staging as an appliance to be used by the contractor's servants, while in this case the defendant furnished or maintained the premises in a dangerous condition, it is difficult to understand how that difference in the facts affects the legal principle involved. Whether the defendant furnishes the contractor with defective tools, or induces him to undertake the performance of work in a dangerous place, the defendant's liability for resulting injuries to the contractor's servants—his invitees— does not depend on a question of mere terminology. The legal definition of his duty would be the same in both cases. See *Erickson* v. *Railroad*, 41 Minn. 500. The defendant's employment of Frost did not make the latter a tenant of the former, or render the plaintiff a trespasser or mere licensee as against the defendant. He was an invitee; and it owed to him the nondelegable duty of using reasonable care to protect him from the concealed danger occasioned by its maintaining upon its wires, near which it invited him to work, a high voltage of electricity. The jury were authorized to find from the evidence that it did not perform this duty.

It is further contended that if the defendant was negligent in the manner above indicated, its negligence was not the proximate cause of the plaintiff's injury, because, according to the defendant's claim, the evidence shows that for some cause, not attributable to the defendant, the plaintiff was in the act of falling before his hands came in contact with the wires; and it is urged that this was an independent, intervening cause of the accident, without which the plaintiff would have sustained no injury, and hence that it was the proximate cause thereof. Whether upon the facts, as the defendant assumes them to be, this conclusion as a matter of law is sound, is at least open to doubt. But unless the evidence reported shows that the defendant's theory of the accident is necessarily true, it is unnecessary, upon the motion for a nonsuit, to discuss the correctness of the legal conclusion submitted. For some reason, perhaps due to the effect of the electrical shock, the plaintiff was not able to recall what he did, or what occurred, after he reached the corner of the building, some feet distant from the corner of the staging. That there was evidence tending to sustain the defendant's theory must be conceded; but there was other evidence supporting the plaintiff's theory that he was attending to his proper work, and that accidentally his hands came in contact with the wires before he began to fall; in other words, that in seeking to free himself from the wires he fell backward and off the easterly end of the staging, instead of forward and off

the northerly side of the staging, as claimed by the defendant. A fellow-workman testified that he saw the plaintiff standing at the northeast corner of the staging, looking down, apparently waiting for a board to be handed up to him; that the witness went directly down the runway on the side of the staging, and when he reached the ground he saw the plaintiff falling off the easterly end of the staging, from the position he was occupying when he last saw him. It was competent for the jury to find that it did not take the witness more than a minute or two to reach the ground after he saw the plaintiff standing on the staging, although he said it was "in the neighborhood of five minutes." The distance he walked and the speed he made going "right straight down the run" might be more trustworthy evidence of the time it took him, than his opinion. Upon this evidence and the fact that he was injured by the electrical current on the adjacent wires, it was competent for the jury to find that the plaintiff immediately before and up to the time of the accident was standing at the northeast corner of the staging, attending to his work. *Murray* v. *Railroad*, 72 N. H. 32, 40.

Miss Arnott, the only witness who saw him when his hands touched the wires, testified that the plaintiff was near the corner of the staging; that the first thing she saw "was some one fall against the wires, throw out their arms, and then he fell to the ground"; that he fell off the east end of the staging, and that his feet were on the staging when he touched the wires. On cross-examination, she testified that he began to fall before he touched the wires. To say the least, her testimony was somewhat contradictory. But it is apparent that he had not lost his balance before he came in contact with the wires. If he had, his momentum would naturally have carried him off the northerly side of the staging and forced the wires out; whereas there was evidence that the corner post of the staging was burned or scorched at the time of the accident, which fact had some tendency to prove that he pulled the wires toward him, and that he was not falling at that time. The act of drawing back from the points of contact would doubtless be a natural or instinctive movement to make under such circumstances, if it was possible. In this connection, the fact that he fell off the east end of the staging, though very near the post, is significant. Upon this state of the evidence, it was competent for the jury to find that the plaintiff did not lose his balance and fall upon the wires, but that he came in contact with them while he had entire control of his person. The causal connection between the defendant's negligence and the plaintiff's injury, upon this view of the evidence, is clearly established; or at least, there was evidence sustaining that theory which was proper for the consideration of the jury.

It is further argued that the plaintiff was guilty of contributory negligence. But so far as this is based upon the assumption that he stumbled over the boards, or slipped on the ice or snow on the boards and fell onto the wires, it is sufficient to say that such is not a necessary inference from the evidence, and the plaintiff was not obliged to negative the imputation of contributory negligence ased upon it. The fact that he chose this particular place for aking up the boards, which proved to be a dangerous place, when che work could have been safely done at other points on the staging, is merely evidence for the consideration of the jury upon the question of his care, in view of his actual or constructive knowledge of the situation. Nor is it correct to say that there was no evidence that the plaintiff was in the exercise of due care. It is well settled in cases of this character that direct affirmative evidence that the plaintiff was exercising due care is not necessary; it may be inferred from all the circumstances attending the accident and from the lack of evidence indicating carelessness on his part. *Lyman* v. *Railroad*, 66 N. H. 200; *Hutchins* v. *Macomber*, 68 N. H. 473; *Gahagan* v. *Railroad*, 70 N. H. 441. The evidence is consistent with the theory that the plaintiff while engaged in performing his work was exercising that degree of care which an ordinarily prudent man might exercise under the same circumstances, that his injuries were proximately attributable to the negligent act of the defendant, and that he did not voluntarily take the risk of the danger he encountered. It follows that the defendant's motions for a nonsuit and for a verdict were properly denied.

Several exceptions were taken to the refusal of the court to instruct the jury as requested by the defendant. In some of the requests, it was assumed as a matter of law that the defendant is not liable because it was the duty of the contractor to protect his men against the known dangers of the situation. But as it has already been shown, this is no defence.

Other requests are founded upon the proposition that if the work contracted to be done did not necessarily produce the danger, —that is, if the contractor could have constructed the building without creating the dangerous situation that did exist,—the defendant is not responsible. This position has already been considered and found to be untenable. It would also have been erroneous to instruct the jury, as in substance requested, that if the plaintiff came in contact with the wires as a result of a fall not due to the defendant's fault, the fall would be an independent, intervening cause of the accident, which would relieve the defendant of liability for the plaintiff's injuries. This proposition omits the necessary qualification that this legal result would not follow if the defendant knew, or ought to have known, that workmen on

the staging, while in the exercise of ordinary care, were liable to fall upon the wires. It was competent for the jury to find that accidents of that character might reasonably be apprehended from the situation the men were in and the character of the work they were doing. *Pittsfield etc. Co.* v. *Shoe Co.*, 72 N. H. 546; *Ela* v. *Cable Co.*, 71 N. H. 1. Whether the plaintiff's position at that time ought reasonably to be apprehended is, to say the least, under the evidence reported a question upon which reasonable men might differ. To base an instruction, discharging the defendant from liability, upon the assumption that the plaintiff's fall was an independent, intervening cause or occasion of his injuries, which could not have been anticipated, would be equivalent to an invitation to the jury to find that his accident of falling was not in accordance with the experience of mankind that men do fall from stagings. This is palpably erroneous. The fall cannot be deemed an act which could not be reasonably anticipated, and the requests involving that idea were properly denied because they were not applicable to the evidence. The requests relating to contributory negligence, assumption of risk, and burden of proof were substantially given in the charge.

The defendant took several exceptions to the charge which need not be specifically considered, since the questions involved have been already considered, and the charge was in substantial accord with the law. If the defendant was not obliged, in the language of the charge, " to use all the means and appliances known to the business of transmitting electricity, so as to insure as far as possible the safety of people who are lawfully near to and likely to be exposed to the wires," it was bound to take at least reasonable precautions to that end, as the jury were instructed in other parts of the charge. If, standing alone, this language is too broad as a definition of the defendant's duty, it was so far qualified by the other parts of the charge, which were obviously correct, as to prevent its misleading the jury. *Saucier* v. *Spinning Mills*, 72 N. H. 292; *Cohn* v. *Saidel*, 71 N. H. 558, 571; *Lord* v. *Lord*, 58 N. H. 7, 11; *Cooper* v. *Railway*, 49 N. H. 209. In the preceding sentence the court said that it was the defendant's duty to " so guard and protect their wires as to make the place where the workmen were employed near them reasonably safe." And the same idea was expressed in the charge several times. It is clear that the jury must have had a correct idea upon this subject.

. The exceptions taken to the evidence have not been argued, but it is believed they present no error.

*Exceptions overruled: judgment on the verdict.*

PARSONS, C. J., and CHASE and BINGHAM, JJ., concurred.

YOUNG, J., *dissenting.* In my view of the law, a contractor's servant cannot be permitted to maintain an action against the owner of the premises, merely because he is such a servant, unless the contractor could have maintained the action if he had been injured instead of his servant; and no facts are shown in this case that make it an exception to this rule.

The doctrine of *respondeat superior* can have no application in this case, for the work of building this power-house was not necessarily dangerous, but became so only because of the method the contractor employed to do the work (*Bailey* v. *Railroad*, 57 Vt. 252); and the work which the contractor was employed to do was nothing the law made it the defendants' duty to do for the plaintiff's benefit. *Story* v. *Railroad*, 70 N. H. 364. So if he can recover, it must be because the defendants—not the contractor—have failed to perform a duty the law imposed on them for the plaintiff's benefit. *Pittsfield etc. Co.* v. *Shoe Co.*, 71 N. H. 522, 530. The first question, therefore, will be to inquire what duties the law imposes on a landowner for the benefit of others; and the second, whether there is any evidence from which it can be found that the defendants have failed to perform any duty the law imposed on them for the plaintiff's benefit.

The application of the elementary rule, that it is the duty of every one to use ordinary care in the conduct of his lawful business to avoid injuring those with whom he either knows, or ought to know, his business will bring him in contact, makes it the duty of a landowner to use such care either to keep his premises in such condition that those whom he invites to visit him can do so in safety, or to notify them of all the dangers incident to making the visit, of which he knows and they are ignorant. Also, when he furnishes instrumentalities for the use of those with whom he has no contractual relation, it is his duty to use such care to notify them of any defects in the instrumentalities that make their use dangerous. *Gagnon* v. *Dana*, 69 N. H. 264, 266. Also, when he employs an independent contractor to do work upon his premises, and retains control of the premises and a general supervision over the work, the law imposes the same duty on him for the benefit of the contractor's servants, in respect to the way he maintains his premises and the instrumentalities that are provided for their use, that it imposes on him for the benefit of those who come upon his premises by his own invitation. Also, when he is occupying his premises jointly with the contractor, the law imposes the same duty on him for the benefit of those whom the contractor is authorized to bring upon the premises that it does for the benefit of those who come upon them by his own invitation. My attention has not been called to any case, in which the servant of an in-

dependent contractor has been permitted to recover from the owner of the premises, which did not fall within one of these last three classes, and where the plaintiff's right to recover was not put upon one of these grounds, rather than on the ground that the servants of such a contractor are invitees, and that the owner of the property owes them the same duties that the law imposes on him for the benefit of those who come upon his premises by his invitation. *Stone* v. *Railroad,* 19 N. H. 427,—51 Am. Dec. 200, note. Consequently, before the plaintiff can recover, there must be some evidence from which it can be found either (1) that the defendants invited him to come upon their premises, (2) that they provided for his use the instrumentalities whose defective condition caused his injury, (3) that they retained control over the work, or (4) that they and the contractor were in joint occupation of the premises where the plaintiff was injured.

Notwithstanding the defendants were the owners of the land on which the contractor was building their power-house, there is no evidence from which it can be found that they were entitled to the possession at the time the plaintiff was injured. So it does not follow as a matter of law, from the fact that he was rightfully there, that he was there by their invitation. If he were, it would be his duty to leave the premises when they directed him to do so; and if he refused to go, they could maintain an action of trespass against him. It is obvious that if he was there as the contractor's servant, they could neither drive him from their premises, nor maintain an action of trespass against him if he refused to leave when they directed him to do so; for the contractor had a right, by virtue of the contract he had made with the defendants, to bring as many men upon the premises as he thought were reasonably necessary to do the work that he had undertaken to do. So it would be an answer to such an action for the servant to show that he was there by the contractor's invitation.

The relations which exist between a person who employs an independent contractor to erect a building upon his land and the men the contractor employs to do the work are very similar to those which exist between a landlord and the family or servants of his tenant. The agreement that an independent contractor makes with his employer carries with it by necessary implication the right to take possession of so much of his employer's land as is reasonably necessary for the purpose of doing the work, and to retain it for a reasonable time, and also the right to bring with him all the men he thinks are necessary to complete his contract. Although the agreement that a tenant makes with his landlord usually describes the premises he is to occupy and the time he is to occupy them, with more or less accuracy, it does not always do

so; but a tenant's agreement, like that which an independent contractor makes with his employer, carries with it by necessary intendment the right to bring as many men upon the leased premises as he thinks are necessary to enable him to use the premises profitably for the purpose for which they were leased. The contractor's servants do not come upon the premises where he is to do the work by his employer's invitation, any more than a tenant's servants come upon the leased premises by the owner's invitation. In both cases the owner of the premises has parted for a time with his right to their possession, and in both cases he knew when he did it that the person to whom he had given the right of possession intended to bring with him the men necessary to enable him to effect the purpose that induced him to take possession of the property; but notwithstanding the owner knew this, he cannot be said to have invited the servants of either his contractor or tenant to come upon his premises. The servants of both are rightfully there because the right to the possession of the property carries with it by necessary intendment the right to bring as many men upon the premises as are reasonably necessary to effect the purpose which induced either the contractor or tenant to take possession of the property. Consequently, the right of their servants to be there does not depend upon the willingness or unwillingness of the owner, but upon the willingness or unwillingness of their employer; for he could, and the owner of the property could not, drive them from the premises.

The test which determines when a tenant's servants can recover from his landlord is the result of the inquiry whether the tenant could have recovered if he had been injured instead of his servant. *Towne* v. *Thompson*, 68 N. H. 317; *Cate* v. *Blodgett*, 70 N. H. 316; *Bowe* v. *Hunking*, 135 Mass. 380, 383; *Jaffe* v. *Harteau*, 56 N. Y. 398. This also is the rule which would have been applied to determine whether the defendants could recover from the plaintiff if they had brought an action of trespass against him, to recover for the injury he did to their wires when he fell upon them; for in that case the test to determine whether or not they could recover would be to inquire whether they could have recovered from the contractor if he had done what the plaintiff did. *Portsmouth Gas Light Co.* v. *Shanahan*, 65 N. H. 233. If his contract would have authorized him to do what the plaintiff was doing when he was injured, they could not recover from the plaintiff; but if it would not have authorized the contractor to do what the plaintiff was doing, then they could recover from the plaintiff for whatever damage he did to their wires.

Since the test to determine whether the defendants could maintain an action against the plaintiff, for anything he did as the con-

tractor's servant, would be to inquire what rights the contract conferred on the contractor in respect to occupying the defendants' premises, the test to determine whether the plaintiff can maintain this action should be to inquire what duties that contract imposed on the defendants for the contractor's benefit. This is the converse of the first proposition; so if that is sound, this must be.

There is another test which demonstrates the soundness of this proposition. That is the rule, that a judgment on the merits in favor of one party to an action is a bar to an action by the other party to recover for an injury growing out of the same state of facts; for it is a rule of universal application, that if A can recover from B in an action counting on B's failure to perform an imposed duty, B cannot recover from A for any injuries that he may have sustained in the same accident, caused by A's failure to perform some duties the law imposed on him for B's benefit. *Gregg* v. *Company*, 69 N. H. 247. Consequently, if the defendants had recovered from the plaintiff for the injuries he did to their wires, the judgment in that action would be a bar to the maintenance of this suit.

The reason that a servant of the tenant is ever permitted to recover from the landlord is not because the law imposes any duty on the landlord for the benefit of his tenant's servants, but because the law imposes the duty of doing what the ordinary man does to enable his guests to visit him in safety, both upon the landlord for the benefit of his tenant and upon the tenant for the benefit of his servants. Consequently, if the tenant's servant is injured by the tenant's failure to use such care, his servant can maintain an action against him to recover the damages he has sustained because of it; and the tenant can recover over from the landlord, if the landlord's fault was the legal cause of his failure to use ordinary care to enable his servant to do his work in safety. *Gregg* v. *Company*, 69 N. H. 247; *Boston & Maine R. R.* v. *Brackett*, 71 N. H. 494; *Boston & Maine R. R.* v. *Sargent*, 72 N. H. 455. The reason, therefore, that the tenant's servant is permitted to maintain an action against the landlord in the first instance, is not because the landlord has failed to perform any duty the law imposed on him for the servant's benefit, but to prevent circuity of action.

In short, the plaintiff was not using the staging at the time he was injured at the defendants' request, neither was he upon it in order to do their work. It was no more for the defendants' advantage to have the plaintiff use this staging in the way he was using it when he was injured, than it would have been to have him use the stairways in a factory they had leased to his employer. If he had used these, notwithstanding the defendants put them into the building to make it available for the purposes for which it

was leased, and had been injured because of their defective condition, the test to determine whether he could recover from the defendants would be to inquire whether the contractor could have recovered if he had been injured instead of the plaintiff. *Bowe* v. *Hunking*, 135 Mass. 380, 383. Although it is true that the defendants knew, when they employed the contractor to build their power-house, that he must bring his servants with him in order to do the work they had employed him to do, it cannot be said that this is evidence from which it could be found that the men the contractor employed to do the work came upon the premises by the defendants' invitation, any more than it could be said that if they leased the power-house to the contractor after it was erected, the men he employed to run it came there by their invitation, from the fact that they knew when they leased it to him that he must bring men there in order to run it.

Neither can it be said that they came there by the defendants' invitation, from the fact that the defendants expected to receive some advantage from the work the contractor did upon their premises. If it could, it could also be said that a tenant's servants came upon his landlord's premises by the landlord's invitation, from the fact that the landlord expects to derive some benefit— his rent—from the work that his tenant's servants do on his (the landlord's) premises. The fact that the contractor was building this power-house for the defendants does not make the work of building it their work. If it does, whoever employs an independent contractor to build a ship, or to make a pair of shoes, is liable to the contractor's servants while they are engaged upon the work, in the same way and to the same extent as though they were his servants, notwithstanding he can have no choice in their selection or in the selection of the instrumentalities employed in doing the work.

When the contractor completed the building and the defendants paid him for it, the building would be theirs, and not before. P. S., c. 141, s. 10. In the same way the ship or shoes would become his property, and in the same way, when a tenant makes his rent out of the work he does in his tenement and pays it to his landlord, it becomes his landlord's money. In one case the owner invites the contractor to come upon his premises, and in the other he invites his tenant; and he does this in both cases because he expects to receive some benefit from their coming. So there is no logical reason for saying that he invites the servants of an independent contractor to visit him, and that he does not invite the servants of his tenant to come upon his premises.

As a matter of fact, an employer does not invite the contractor's servants to come upon his premises, neither does a landlord ordinarily invite his tenant's servants, although in both cases the own-

ers of the premises know that the person they have invited intends to bring his servants with him, and are willing that he should do so. In both cases they expect to receive some advantage from his coming, and in both his servants are rightfully there, not because the owners have invited them to be there, but because their employer had a right under his contract to bring them there, and brought them there in the exercise of that right.

There is no claim in this case that the defendants provided any instrumentalities to be used in the construction of the building, which was held in *Mulchey* v. *Society*, 125 Mass. 487, *Coughtry* v. *Company*, 56 N. Y. 124, *John Spry Lumber Co.* v. *Duggan*, 80 Ill. App. 394, *Johnson* v. *Spear*, 76 Mich. 139, 143, and *Bright* v. *Company*, 88 Wis. 299, to impose on the employer, for the benefit of the contractor's servants, the duty of using ordinary care to see that the "instrumentalities" were suitable for the purpose for which they were provided. These cases do not hold that the employer owes an independent contractor's servants the same duty he owes to those who come upon his premises by his invitation; but that if he furnishes "instrumentalities" for the use of the contractor's servants, he owes them the same duties in respect to such instrumentalities that the law would impose on him for the benefit of his own servants.

Neither is there any claim that the defendants retained any control over the work, which has been held in several cases (*Samuelson* v. *Company*, 49 Mich. 164) to impose the same duties on the employer for the benefit of the contractor's servants that it would impose on him for the benefit of his own servants, or any one else that he invited to visit him.

Neither is there any valid foundation for the claim that the defendants and the contractor were in joint occupation of the premises. There is no evidence as to the terms of the contract, so it cannot be inferred that they intended for the contractor to occupy any more of their premises than was necessary to enable him to do the work he had agreed to do, conveniently, economically, and without interfering unnecessarily with that part of the premises they occupied for other purposes. Neither can it be said that they intended for the contractor to build his staging in the way he did, if it was negligence for him to do so. In the absence of all evidence, there is a presumption that a man will use ordinary care. So in the absence of all evidence on this question, it must be presumed that the defendants did not expect him to build a staging near these wires, unless the ordinary man would have done it. Although it may be a matter of common knowledge that men use outside staging in erecting brick blocks when they can do so in safety, it is not a matter of common knowledge that ordinary men

are accustomed to use such stagings when it is negligence to do so. It would be a confusion of terms to say that ordinary men are accustomed to do what it is negligence to do; for that would be only another way of saying that the ordinary man is accustomed to do what the ordinary man would not have done. There is no evidence from which it could be found that the contractor did not have the exclusive occupation of all the land necessary to enable him to erect the defendants' power-house conveniently and economically; for there is no evidence from which it can be found that it was reasonably necessary for him to build a staging where it was possible for his workmen to come in contact with the defendants' wires, or that the defendants ought to have anticipated that he would do so when they employed him to do the work, unless it can be found that they ought to have anticipated it from the mere fact that it was possible for him to do so. It is obvious that there is no presumption that they intended him to do that which it was his duty not to do.

It cannot be found that the defendants were occupying that part of their premises on which the plaintiff was at work when he was injured, jointly with the contractor, from the fact that there was no evidence as to what part of the defendants' premises the contract contemplated should be set apart for the contractor's use; for not only is there no presumption that the defendants intended that the contractor should use that part of their premises unless it was reasonably necessary for him to do so, or build such a staging as he built if it was negligence to do so, but there is a presumption, when a person fails to introduce evidence in respect to the situation at the time he was injured which is apparently within his reach, that he does not do it because he knows that if he does it will tend to prove he has no case. _Mitchell_ v. _Railroad_, 68 N. H. 96. Although there is a presumption, in the absence of all evidence, that a person was exercising ordinary care at the time he was injured (_Tucker_ v. _Railroad_, ante, p. 132; _Gahagan_ v. _Railroad_, 70 N. H. 441, 451; _Smith_ v. _Railroad_, 70 N. H. 53; _Lyman_ v. _Railroad_, 66 N. H. 200; _Huntress_ v. _Railroad_, 66 N. H. 185), this is not because the absence of evidence is evidence that the person who relies on it was exercising ordinary care, but because there is a presumption in any given case that a person was exercising such care, from the fact that it was his duty to do so; for it is a matter of common knowledge that the ordinary man ordinarily does that which it is his duty to do.

It is apparent that the plaintiff could have put in evidence the contract between the contractor and the defendants, and the legitimate conclusion from his failure to do so is that the contract would show that the contractor had no right under it to do what

the plaintiff was doing at the time he was injured. So, instead of no evidence being evidence in his favor, when it appears that the person who relies on it has failed to introduce evidence in respect to the matter which is within his control, his failure to produce it tends to prove that the facts are not what he claims they are; for it is a matter of common knowledge that a person ordinarily introduces all the evidence within his control which has any tendency to sustain his position.

The fact that these wires had been moved also tends to negative the idea that the defendants intended to occupy any part of their premises in connection with the contractor; and the fact that he built his staging where he did is at least as consistent with the theory that he built it in that place by the defendants' permission, as it is with the theory that he had a right to build it there. Consequently, it cannot be found from that evidence alone that the contract he made with the defendants authorized him to build it where he did (*Deschenes* v. *Railroad*, 69 N. H. 285; *Spead* v. *Tomlinson*, *ante*, *p.* 46); and it is obvious that if he was a mere licensee in respect to maintaining this staging, there was no such joint occupation of the premises as would impose a duty on the defendants for the benefit of the contractor's servants.

The burden of proof was on the plaintiff to establish every fact essential to his right to recover. This would include showing that the contractor had a right under his contract to occupy a part of the defendants' premises jointly with them, if he (the plaintiff) relies on the defendants' failure to perform a duty the law imposed on them because of such joint occupancy. This burden is not sustained by a failure to introduce any evidence as to the terms of the contract under which the contractor was building the power-house, when it is apparent that such evidence was within his reach. If the contractor's servants do not claim through him, but in their own right,—or, in other words, if the servants of an independent contractor come upon the owner's premises by his invitation,—it is manifest that the only way in which the defendants could have avoided liability, considering the business in which they were engaged, would have been to move their pole line to some place where the contractor's servants could not possibly come in contact with it, to shut down their plant whenever any of his men were on their premises, or to see that each man he employed knew of and appreciated the risk incident to coming in contact with these wires. For if it is not enough to avoid liability, to notify the person who is employed to do the work of all the dangers incident to doing it, of which the employer knows and of which the contractor is ignorant, as was done in this case, then any one who employs an independent contractor to do work, the

doing of which is necessarily dangerous or which may become dangerous from the way in which the contractor does it, is liable not only for his own negligence, but also for the negligence of the contractor, if he could have anticipated that the contractor might be negligent.    If the servants of such a contractor come upon the owner's premises by his invitation, he owes them the same duties that the law imposes on him for the benefit of his own servants, or of others whom he invites to come upon his premises, notwithstanding he can have nothing to do with their selection and cannot remove them from his premises except for a cause that would authorize him to remove the contractor; and this, no matter how ignorant or incompetent they may be.    To illustrate: If a person should employ an independent contractor to take down coving that had become so rotten that it was liable to fall upon those who undertake to remove it, he must not only notify the person he employs to do the work of all the dangers incident to doing it, of which he knows and of which his contractor is ignorant, but he must also see that every man the contractor employs about the work is informed of all the dangers incident to doing it and that he fully appreciates the risk incident thereto, or answer in damages if he is injured because of a danger incident to doing the work of which he was not informed, notwithstanding the owner was particular to notify the contractor of risk incident to this particular defect.

If the contractor employs servants who are incapable of appreciating the risk incident to doing the work which the contractor was employed to do, on account of their youth or mental condition, there would seem to be no way in which the owner could escape liability; for it is obvious that he could neither discharge them, nor prevent the contractor from employing them, nor remove them from his premises without the contractor's consent, and merely telling them of the danger would not excuse him if they were incapable of appreciating the risk incident to doing the work. On the other hand, he would be liable to the contractor if he interfered with his servants, and hindered or prevented them from doing the work that he had employed them to do.   In other words, if a person who employs an independent contractor permits the contractor's servants to do the work, he is liable to them for the injuries they may receive, notwithstanding they could not have been injured but for the contractor's negligence in doing that which his contract did not contemplate he should do, unless such a contract contemplates that the contractor will do everything it is possible for him to do; and if he prevents them from doing the work, he is liable to the contractor for any damages that he may sustain by reason of it.

If the contractor was lawfully in possession of the land covered by the building and stagings, and the defendants of that on which

their poles were set and over which their wires were strung,—or, in other words, if they were adjoining proprietors with the division line midway between the nearest wire and the outside of the staging,—and if it is conceded that a landowner owes a common-law duty to an adjoining proprietor in respect to the structures on his premises, the verdict should have been set aside.

If the defendants did not do all that the ordinary man would have done to enable the contractor and his servants to do their work in safety, when they notified him of the danger of coming in contact with their wires, still the only duty they owed the plaintiff was that of using ordinary care to enable him to do his work in safety; and the jury must have understood from the instructions which were given them subject to the defendants' exceptions, that in order to exercise such care the defendants must "use all the means and appliances known to the business of transmitting electricity, so as to insure as far as possible the" plaintiff's safety; for after instructing the jury, in substance, that it was the duty of the defendants to use ordinary care to enable the plaintiff to do his work in safety, the court proceeded as follows: "To apply the principle of law I have stated to you, and which I have tried to illustrate, to the present case, I instruct you that . . . when a person or a corporation engages in the business of transmitting electricity in high voltage,—a voltage so high as to be dangerous to the lives and limbs of the persons who may come in contact with them while in the exercise of ordinary care,—it is the duty of such a person to use all the means and appliances known to the business of transmitting electricity, so as to insure as far as possible the safety of people who are lawfully near to, and likely to be exposed to, the wires."

It cannot be said, as a matter of law, that the jury were not prejudiced by these instructions, for it is conceded that they were erroneous. Neither can it be fairly found as a fact that the defendants were not prejudiced by them, from any evidence in the case, even if this court could pass upon that question without overruling *Bullard* v. *Railroad*, 64 N. H. 27, and all the cases that follow it. For this is not a case where the plaintiff tripped over an obstruction on his own land and fell upon the defendants' wires, but where he carelessly came in contact with them. If the defendants owed him any duty in respect to protecting him from such an injury, it could only be that of notifying him of the danger of coming in contact with their wires. So the question for the jury in this case (if the plaintiff was entitled to go to the jury) was not whether the defendants used every appliance known to electrical science to protect the plaintiff from injury, but whether they did all the ordinary man would have done when they notified his employer of the danger.