The plaintiff was nonsuited at the trial upon two grounds: First, that no action lay against the defendant in favor of the plaintiff for the alleged injury; and, secondly, that there was not sufficient evidence of negligence to justify the submission of that question to the jury.
At General Term the court were of opinion that there was sufficient evidence of negligence to have required the submission of the case to the jury, if the action lay. But the nonsuit was sustained on the ground that the defendant owed no duty to the plaintiff's intestate in respect to the construction of the scaffold, the falling of which caused his death; that the only duty resting upon the defendant in respect to the scaffold arose out of its contract with Osborn Martin, and that it was liable to them only for injury arising from negligence in its construction.
In coming to this conclusion, the learned court do not appear to have considered the facts that the scaffold was erected by the defendant upon its own premises for the express purpose of accommodating the workmen who should be engaged in putting a cornice on the defendant's building, under the direction of Osborn Martin, with whom the defendant had contracted for such cornice; that the scaffold was upward of fifty feet from the ground, and unless properly constructed would be a most dangerous trap, imperiling the life of any person who might go upon it; that by placing it where they did, on their own premises, for the use of the workmen, they not only licensed but invited them to go upon it, and impliedly held out to them that it was a safe structure, or at least that proper care had been used in its erection. These facts did, we think, impose a duty upon the defendant toward any person who should be invited or licensed by it to go upon the structure, to use proper diligence in its construction and maintenance; and that this duty *Page 127 
existed independently of anything contained in the contract with Osborn Martin. All that was, in fact, said in that contract concerning the scaffold was, that if stagings should be required in putting up the cornice, they should be furnished without expense to Osborn Martin. If the contract had been silent as to stagings, but they had been put up by the defendant before making any contract with Osborn Martin, and they and their workmen had been invited to use such existing stagings, the case would not be materially varied. Or if any other part of the defendant's building had given way by reason of negligence on their part, and a person lawfully on the premises, by the permission or invitation of the defendant, had been injured, the liability would have been the same.
The cases cited on the part of the defendant and referred to in the opinion are not, we think, analogous in principle to the present one. The leading case of Winterbottom v. Wright (10 M. W., 109), clearly illustrates the distinction. Apart from his contract with the postmaster-general to keep the mail coach in repair, Wright, the defendant, had no connection whatever with the occurrence out of which the injury to the plaintiff arose. He did not own or run the coach; it was not in his possession or under his control, and he did not invite anyone to enter it. His only liability, in case of a breach of his contract to keep it in repair, was to the party with whom he had contracted so to do. In the case of the lamp, Longmeid v. Holliday (6 Eng. Law and Eq., 562); the wheel, Loop v. Litchfield (42 N.Y., 351); the boiler, Losee v. Clute (51 N.Y., 494), the defective article had been sold and delivered to the purchaser; the seller, or maker, had ceased to have any control over it; and, in the absence of fraud on his part, responsibility to third persons for what was subsequently done with the article devolved upon those having charge of it. A tradesman who sells an article which he at the time believes, and warrants, to be sound, but which is actually unsound, is not liable for an injury subsequently sustained by a third person, not a party to the contract of sale, *Page 128 
in consequence of such unsoundness. (Longmeid v. Holliday, 6 Eng. L. and E., 562.)
This case is entirely different. At the time of the injury the scaffold belonged to the defendant, had been erected by it, was in its possession and was being used on its premises, with its permission, for the very purpose for which it had been furnished, and by the persons for whose use it had been provided. The only operation which the contract has in the case is to preclude the defendant from setting up that the defective structure was not its own but that of the contractors. Being conceded to be its own structure, furnished by it for use, the duty of due diligence in its construction arose, not merely out of the contract to furnish it, but from the fact that the defendant did actually furnish it for the express purpose of enabling and inducing the men who were to do the work to go upon it.
It is evident from the nature and position of the structure that death or great bodily harm to those persons would be the natural and almost inevitable consequence of negligently constructing it of defective material or insufficient strength. It was clearly the duty of the defendant and its agents to avoid that danger by the exercise of proper care. (Thomas v.Winchester, 2 Seld., 397; Godley v. Hagerty, 20 Penn. St. R., 387; Cook v. The N.Y. Floating Dry Dock Co., 1 Hilt., 436.) This duty was independent of the obligation created by the contract. If neglected it would be no answer to the action to say that the defendant was also guilty of a breach of its contract; nor would it be any better answer to say that by the terms of the contract it was permitted so to construct the scaffold as to imperil the lives of the workmen.
We concur with the General Term in its opinion that there was evidence tending to show negligence, which should have been submitted to the jury. As to the weight of this evidence we express no opinion. It was for the jury to determine whether or not it satisfied them that the defendant or its employes had been guilty of negligence in the construction of the scaffold, and whether the injury arose from that *Page 129 
cause. It was also for them to determine whether the deceased had been guilty of contributory negligence. We do not think it was a proper case for a nonsuit.
The judgment should be reversed and a new trial ordered, with costs to abide the event.
All concur.
Judgment reversed.