BRIGHT, Administrator, Respondent, vs. THE BARNETT & RECORD COMPANY, Appellant.

*September 10 — October 2, 1894.*

*Death caused by negligence: Absence of privity or contract relation: Implied invitation to use defective staging: Act imminently dangerous to life: Instructions to jury: Evidence: Damages.*

| 88 | 299 |
|---|---|
| d90 | 502 |
| 88 | 299 |
| 92 | 645 |
| 88 | 299 |
| s26 LRA | 524 |
| 26 LRA | 506n |
| 28 LRA | 573n |
| 46 LRA | 68n |
| 88 | 299 |
| s61 LRA | 308 |

1. By a contract with the defendant company, which was the principal contractor for the erection of an elevator building, a fire- extinguisher company was to construct and place certain apparatus in the building, and the defendant was to furnish the staging needed in performing the work. Through defendant's negligence a defective plank was used in such staging, and by reason thereof an employee of the fire extinguisher company was killed. *Held,* that the defendant was liable for such death, although there was no privity or contract relation between it and the deceased, on the ground that it had impliedly invited him to use such staging, and also on the ground that the negligent use of the defective plank was an act imminently dangerous to human life.

2. The plank having been used in a place where the deceased could not see the defect on account of darkness, he was not chargeable with contributory negligence in walking upon it.

3. An instruction that "ordinary care is such care as the majority of persons would exercise under the circumstances," was correct.

4. In an action for the death of an unmarried man, to recover damages for the benefit of his parents, evidence that he had said that he did not intend to marry and that he would take care of his father and mother, was properly admitted.

5. An award of $4,000 in such a case is *held* not excessive; the jury having assessed the damages at $5,000, and the trial court having required the plaintiff to remit all in excess of $4,000.

APPEAL from the Superior Court of *Douglas* County.

Action to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The principal facts are stated in the opinion.

The mother of the intestate testified, under objection, that she had had conversations with her son about his

future plans of living. "He said he did not intend to get married, and that he would not stay away long; that he wanted us to move to Cincinnati or Hamilton where he could get work with the pipe-fitters or gas-fitters or plumbers. I told him he would get married, and he said that he would not, but that he would take care of us when we were old as we had taken care of him when he was young. He said he did not care whether his father worked any or not, but that he was able to take care of us. He said the same things oftentimes before." The father and a brother of the deceased also testified to the same effect.

On the subject of negligence and ordinary care the court charged the jury, among other things: "You understand from instructions you have had in other cases that ordinary care is such care as the majority of persons would exercise under the circumstances. Now this Mr. Thompkins, the deceased, owed it to himself to exercise ordinary care for his own safety. If he did not do it, and that lack of the exercise of ordinary care was the direct cause of his death, there can be no recovery in this case. Negligence is not to be inferred. That is, it isn't to be reached by conjecture. It must be shown by evidence. Now, unless the evidence here shows a want of ordinary care on the part of the deceased it cannot be found by you. It must be proved either directly or proved by inference from facts that are proved, that is, a natural inference from the facts that are proved."

The jury found a verdict in favor of the plaintiff and assessed the damages at $5,000. The court granted a motion to set aside the verdict, unless the plaintiff would remit all in excess of $4,000, which the plaintiff elected to do, and judgment was entered accordingly. The defendant appealed.

For the appellant there was a brief by *Catlin & Butler* and *Carl C. Pope*, and a supplemental brief and oral argu-

ment by *Mr. Pope.* They contended, *inter alia*, that the
deceased was the employee of the fire extinguisher com-
pany, and the appellant owed him no legal duty arising
from contract or otherwise. The law is well settled that
this action cannot be maintained. Cooley, Torts, 91; *Faw-
cett v. Y. & N. M. R. Co.* 71 Eng. C. L. 610; *McCall v.
Chamberlain,* 13 Wis. 637–641; *Necker v. Harvey,* 49 Mich.
517; *Winterbottom v. Wright,* 10 Mees. & W. 109; *Losee v.
Clute,* 51 N. Y. 494; *Devlin v. Smith,* 89 id. 470; *Cahill v.
Layton,* 57 Wis. 614, 617; *Griswold v. C. & N. W. R. Co.*
64 id. 657, 659; *Ryan v. Wilson,* 87 N. Y. 471; *Cole v. Mc-
Key,* 66 Wis. 510; *Dowd v. C., M. & St. P. R. Co.* 84 id.
105–116. The fire extinguisher company owed to the de-
ceased, its employee, the duty of a careful inspection of the
staging erected by the employees of the defendant, and
could not delegate this duty to another. Bailey, Master's
Liability, 129; *Flike v. B. & A. R. Co.* 53 N. Y. 549; *Fuller
v. Jewett,* 80 id. 46, 52; *Vosburgh v. L. S. & M. S. R. Co.*
94 id. 374, 380; *Devlin v. Smith,* 89 id. 470, 476; *Probst v.
Delamater,* 100 id. 266, 272; *Gottlieb v. N. Y., L. E. & W.
R. Co.* id. 462–469; *Goodrich v. N. Y. C. & H. R. R. Co.*
116 id. 398–402; *Ford v. L. S. & M. S. R. Co.* 124 id. 493–
498; *Cregan v. Marston,* 126 id. 568–572. The failure of
the extinguisher company to discharge the duty of inspec-
tion was a new, independent, distinct, and proximate cause
of the injury, and the defendant was thereby relieved from
liability. *Moon v. N. P. R. Co.* 46 Minn. 106; 1 Shearm. &
Redf. Neg. § 26; Wharton, Neg. § 438; Cooley, Torts, 70,
71, 78, 79; *Milwaukee & St. P. R. Co. v. Kellogg,* 94 U. S.
469; *Ardesco Oil Co. v. Gilson,* 63 Pa. St. 150; *Painter v.
Pittsburgh,* 46 id. 213; *Godley v. Hagerty,* 20 id. 387; Bai-
ley, Master's Liability, 97, note. The employees of the
defendant worked under the direction of the fire extin-
guisher company in putting in the staging, and while doing
that work must be regarded as the servants of that com-

pany. *Wyllie v. Palmer*, 137 N. Y. 248, 257; 1 Shearm. & Redf. Neg. (4th ed.), 269, § 160; *Elder v. Bemis*, 2 Met. 604. The trial judge improperly allowed the plaintiff to prove the statements of the deceased to the effect that he was not going to marry and that he was going to devote his life to the support and care of his parents. This proof was offered and admitted in order to enhance the verdict for damages, and it certainly had that effect. Tiffany, Death by Wrongful Act, § 194. The amount of recovery must be confined to the actual pecuniary loss which the beneficiaries have sustained, and nothing as a *solatium.* Under all the authorities the damages in this case are excessive. Tiffany, Death by Wrongful Act, § 164, note 70; *Hutchins v. St. P., M. & M. R. Co.* 44 Minn. 5; *Potter v. C. & N. W. R. Co.* 22 Wis. 615; *Castello v. Landwehr*, 28 id. 522; *Ewen v. C. & N. W. R. Co.* 38 id. 613; *Hoppe v. C., M. & St. P. R. Co.* 61 id. 357; *Johnson v. C. & N. W. R. Co.* 64 id. 425; *Schrier v. M., L. S. & W. R. Co.* 65 id. 457; *Mulcairns v. Janesville*, 67 id. 24; *Annas v. M. & N. R. Co.* 67 id. 46; *Kaspari v. Marsh*, 74 id. 562; *Tuteur v. C. & N. W. R. Co.* 77 id. 505.

For the respondent there was a brief by *Crownhart, Owen & Foley*, and oral argument by *C. H. Crownhart.* They argued, among other things, that if the deceased was in pursuit of a matter of common interest to both himself and the defendant, or if the presence of the deceased upon the staging had a necessary or proper connection with any business he had of a common interest to himself and defendant, then there was an implied invitation by defendant to deceased to go upon the staging for that purpose. *Dowd v. C., M. & St. P. R. Co.* 84 Wis. 113–114; *Mulchey v. Methodist R. Soc.* 125 Mass. 487; *Cahill v. Layton*, 57 Wis. 613; *Powers v. Harlow*, 53 Mich. 507; 16 Am. & Eng. Ency. of Law, 413, 414, and notes; *Hayes v. Phila. & R. C. & I. Co.* 150 Mass. 457; *Bennett v. Railroad Co.* 102 U. S. 580;

*Heaven v. Pender*, L. R. 9 Q. B. Div. 302; *Evansville &
T. H. R. Co. v. Griffin*, 100 Ind. 221; *Campbell v. Portland
S. Co.* 62 Me. 552; *Sweeny v. O. C. & N. R. Co.* 10 Allen,
368, 87 Am. Dec. 644, and note. The staging was immi-
nently dangerous to human life, and defendant is liable to
any person, who, in the discharge of his duties, is injured
by its use, if the dangerous character could not be discov-
ered by ordinary inspection. This liability rests on the
duty the law imposes upon everyone to avoid acts in their
nature dangerous to the lives of others. *Devlin v. Smith*,
89 N. Y. 470; *Coughtry v. Globe W. Co.* 56 id. 124; *Thomas
v. Winchester*, 6 id. 397, and note, 57 Am. Dec. 461; *Man-
ning v. Hogan*, 78 N. Y. 615; *The Rheola*, 19 Fed. Rep. 926;
*The Wm. F. Babcock*, 31 id. 419; *Gerrity v. The Bark Kate
Cann*, 2 id. 241; *Wellington v. Downer K. Oil Co.* 104 Mass.
64; *Norton v. Sewall*, 106 id. 143; *Lechman v. Hooper*, 52
N. J. Law, 253; *Van Winkle v. Am. S. B. Co.* id. 240. This
court has repeatedly sustained much larger damages in
this class of cases, considering the evidence. *Schrier v. M.,
L. S. & W. R. Co.* 65 Wis. 457; *Tuteur v. C. & N. W. R.
Co.* 77 id. 505; *Potter v. C. & N. W. R. Co.* 21 id. 373;
*Potter v. C. & N. W. R. Co.* 22 id. 615; *Castello v. Land-
wehr*, 28 id. 522; *Ewen v. C. & N. W. R. Co.* 38 id. 615;
*Hoppe v. C., M. & St. P. R. Co.* 61 id. 357; *Johnson v. C.
& N. W. R. Co.* 64 id. 425; *Lawson v. C., St. P., M. & O.
R. Co.* id. 447; *Mulcairns v. Janesville*, 67 id. 24; *Annas
v. M. & N. R. Co.* id. 46; *Kaspari v. Marsh*, 74 id. 562;
*McKeigue v. Janesville*, 68 id. 50; *Wiltse v. Tilden*, 77 id.
152; *Faerber v. T. B. Scott L. Co.* 86 id. 226; *Railroad Co. v.
Barron*, 5 Wall. 90; *Bierbauer v. N. Y. C. & H. R. R. Co.* 77
N. Y. 588; *Erwin v. Neversink Steamboat Co.* 23 Hun, 573.

ORTON, C. J.    This action is brought by the administra-
tor of the estate of Benjamin Thompkins, deceased, who
was killed through the negligence of the defendant com-

pany, to recover damages for the benefit of his father and mother, who were dependent upon the deceased for their support. The deceased was thirty-one years of age and unmarried, and his father and mother were about of the age of fifty-five years. The defendant was engaged in building an elevator for grain, in the city of Superior, Wis., and contracted with the General Fire Extinguisher Company to construct, fit, and place therein certain fire extinguishing apparatus and appliances, and the defendant was to furnish the staging that the men employed by the General Fire Extinguisher Company might need in performing said work. Said company needed a staging or a plank walk of a single plank, about sixteen feet long, twelve or fourteen inches wide, and two inches thick, thrown across the bins, about seventy feet from the bottom or above the floor, on which the employees of said company might stand or walk across, back and forth, while prosecuting said work. The defendant contracted and undertook to make and furnish such staging or walk across one of said bins, strongly fastened at each end on cleats on the sides of the bin, on which the deceased and other employees of said company could safely stand or walk while engaged in said work. This particular plank had a large knot, extending nearly across it, about five feet from one end. In prosecuting his work, it was necessary for the deceased to walk across said plank; and on the 10th day of August, 1893, while he was attempting to walk across the same, the said plank broke at said knot and precipitated him to the lower floor of the bin, and killed him instantly. It was so dark in the bin at the time that the deceased could not have seen such defect in the plank, and he had no notice or warning of its defective and dangerous character or condition. Many of the planks used in similar staging in the bins of the elevator had been inspected and tested, but this plank had not been inspected or tested before it was used in this way.

Bright vs. The Barnett & Record Co.

The learned counsel of the appellant say in their brief: "By some means, a plank with a bad knot which could readily be detected by the eyesight was put into the staging by some employee of the appellant, it is supposed." And again they say: "And it was very dark in the elevator at the time of the accident. Could not see anything plainly, only the outline of things generally, and could not see the knot in the plank before referred to when looking down upon it." James Gunning, a witness on behalf of the plaintiff, testified that "he was a carpenter, and was helping the defendant put in these walks and staging. Mr. Clapp was his foreman. He was working for the defendant. He gave him directions how the planks were to go in there. Told him they were for men to walk on in putting up the pipes. He got all his instructions from Mr. Clapp. There were different ones worked with him,— four right along, including himself. There were two fellows that worked in where the accident happened. He thought they were just common laboring men. He does not know who put in the particular plank in question in third bin." M. D. Clapp, referred to above, as a witness on behalf of the defendant, testified " that he was in the employ of the defendant August 10, 1893, at Superior, Wisconsin, on general elevator work. [Witness examines broken plank] and swears it was never tested. He instructed those common street laborers to make this test of the plank, and saw two thirds of them tested, at the least calculation. The broken plank never passed the test. He knew to put in a plank like that meant practically to murder a man." The testimony very clearly shows that the fire extinguisher company gave directions how and where the walks and staging were to be built, but had no supervision of the work or materials used in their construction. The defendant company, according to their contract, undertook to furnish the materials and construct and place the walks and staging in

a safe and suitable manner, for the use of the deceased and other employees of the fire extinguisher company, to stand on and to walk across while doing their work.

1. On the question of the liability of the defendant to the plaintiff, there was no conflict in the evidence. It was all one way. To say the least, the defendant was guilty of the want of ordinary care in furnishing such a grossly defective plank for staging for the deceased to stand and walk on while doing his work. The circuit court was therefore justified in instructing the jury " that the defendant here is responsible in this case, as a matter of law, unless the deceased himself is chargeable with contributory negligence." The first position taken by the learned counsel of the appellant in their brief is that the appellant owed the deceased no legal duty arising from contract or otherwise. This is no doubt the general rule. " The liability of the builder or manufacturer for such a defect is in general only to the person with whom he contracted." But this case belongs with a class of cases that can be sustained outside of this general principle, and may rest on two well-established principles of law:

(1) The defendant, in furnishing this staging for the use of the employees of the fire extinguisher company, on which they might stand or walk in doing their work, had in effect *invited* and induced the deceased to walk on it while doing his work, and was liable to him if he suffered injury from its defective condition caused by negligence in its construction. The case may rest on this simple *implied invitation.* *Gilbert v. Nagle,* 118 Mass. 278; *Elliott v. Pray,* 10 Allen, 378; *Pickard v. Smith,* 10 C. B. (N. S.), 470; *Indermaur v. Dames,* L. R. 1 C. P. 274; *Holmes v. N. E. R. Co.* L. R. 4 Exch. 254; *Coughtry v. Globe W. M. Co.* 56 N. Y. 124; *Mulchey v. Methodist Rel. Soc.* 125 Mass. 487. This last case is closely in point. The Methodist Religious Society employed Needham to paint inside of its church build-

Bright vs. The Barnett & Record Co.

ing, and agreed to erect and remove the staging on which
the employees of Needham could stand while doing their
work. The plaintiff was one of Needham's employees, and,
while standing on the staging put up for painting the ceil-
ing of the church, it broke from under him, and he fell and
was injured. The same ground was taken in that case as
in this,— that there was no privity or contract relation
between the plaintiff and the society, and that the society
owed the plaintiff no duty. The staging was defectively
constructed, through the negligence of the society and its
servants. · The plaintiff recovered, and in the supreme judi-
cial court the exceptions were overruled. The case rested
on this principle of *implied invitation*, that the society in-
vited and induced the plaintiff to stand upon the staging,
to his injury, occasioned by its own negligence.

(2) Such liability may rest upon the duty which the law
imposes on every one to avoid acts imminently dangerous
to the lives of others. This liability to third parties is
held to exist when the defect is such as to render the con-
struction in itself imminently dangerous, and serious injury
to any person using it is a natural and probable consequence
of its use. This principle is illustrated in *Devlin v. Smith*, 89
N. Y. 470. The supervisors of Kings county employed Smith
to paint the inside of the dome of the courthouse, and Stev-
enson was employed to build the scaffold by independent
contract, on which the employees of Smith might stand
while painting the dome. Stevenson was an experienced
scaffold builder, and Smith was not. The scaffold was
ninety feet in height. The plaintiff's intestate was a painter
in the employ of Smith. There was an extremely danger-
ous defect in the construction of the scaffold, in conse-
quence of which the plank on which the intestate was sit-
ting gave way, and precipitated him to the floor below,
and killed him. It was held that Stevenson was liable for
the death, on proof of his negligence in the construction

Bright vs. The Barnett & Record Co.

of the. scaffold.  RAPALLO, J., said in his opinion: "A stronger case where misfortune to third persons, not parties to the contract, would be a natural and necessary consequence of the builder's negligence, can hardly be supposed; nor is it easy to imagine a more apt illustration of a case where such negligence would be an act *imminently dangerous* to human life." We may be allowed to say that the present case is even stronger than that case in the dangerous character of .the defect and in the certain fatality that was the natural and necessary consequence of it.

The following cases were sustained on one or .the other or both of these principles, where there was no privity or contract relation between the parties: *Hayes v. P. & R. C. & I. Co.* 150 Mass. 457; *Elliott v. Hall*, L. R. 15 Q. B. Div. 315; *Bennett v. Railroad Co.* 102 U. S. 577; *Railroad Co. v. Hanning*, 15 Wall. 649; Cooley, Torts, 604–607; Whart. Neg. §§ 349–352; *Corby v. Hill*, 4 C. B. (N. S.), 562; *Powers v. Harlow*, 53 Mich. 507. This last case rests somewhat on the ground of license, and yet also on the ground of *invitation*. COOLEY, C. J., says in the opinion: "A person giving such license, especially when he gives it wholly or in part for his own interest, as was the case here, and thereby *invites* others to come upon his premises, assumes to all who accept the *invitation* the duty to warn them of any danger in coming which he knows of or ought to know of, and of which they are unaware." The case of *Heaven v. Pender*, L. R. 11 Q. B. Div. 503, is very closely in point. The defendant was the owner of a dry dock used for the painting and repairing of vessels, and he contracted with the owner of a vessel to use the dock for painting it, and was to put up and supply the necessary staging for that purpose. The owner employed a master painter to do the painting. The plaintiff was one of his employees; and while painting the outside of the vessel, and using for that purpose the staging put up by the owner, the staging gave

way and he fell and was injured. The plaintiff was held entitled to recover. The case rested upon both principles of *implied invitation* to use the staging, and on the dangerous character of the construction, which was liable to injure those using the same, through the negligence of the owner who put it up. The Master of the Rolls cites the following cases as sustaining this principle of implied invitation: *Indermaur v. Dames*, L. R. 1 C. P. 274; *Winterbottom v. Wright*, 10 Mees. & W. 109; *Langridge v. Levy*, 2 Mees. & W. 519; *Francis v. Cockrell*, L. R. 5 Q. B. 184, 501. *Thomas v. Winchester*, 6 N. Y. 397, rests on the principle that the law imposes the duty of any one to avoid acts in their nature dangerous to the lives of others. *Coughtry v. Globe W. M. Co.* 56 N. Y. 124, is in point. The owners employed O. & M. to put an iron cornice on their mill, and agreed to put up the necessary scaffolding and staging on which they could do the work. The *deceased* was a workman of O. & M., and, while working on the cornice, the scaffold fell, through its negligent construction. See, also, *Evansville & T. H. R. Co. v. Griffin*, 100 Ind. 221; *Campbell v. Portland Sugar Co.* 62 Me. 552, 16 Am. Rep. 503; *Van Winkle v. Am. Steam Boiler Co.* 52 N. J. Law, 240; 16 Am. & Eng. Ency. of Law, 413, 414; and other cases cited in the brief of the respondent.

I have spent much time on this question of the defendant's liability to the plaintiff, for it is about the only question in the case. The negligence of the defendant in using and placing this plank, so obviously and dangerously defective for the plaintiff to walk on, seventy feet above the floor, is beyond question; and, as to the contributory negligence of the deceased, he was certainly not chargeable with any negligence whatever or any want of ordinary care in walking on the plank. He could not see the defect in the plank, on account of darkness. The servant of the defendant who put that plank in place might have expected

this fatal result from its use. M. D. Clapp, a witness of
the defendant, testified that he was the foreman who em-
ployed the man who put that plank in, and " that he knew
to put in a plank like that meant practically to murder a
man."

2. The definition of negligence given by the court in its
charge to the jury was correct. *Duthie v. Washburn*, 87
Wis. 231; *Seymer v. Lake*, 66 Wis. 654; *McClure v. Sparta*,
84 Wis. 269.

3. The testimony for the plaintiff in respect to the rela-
tions of the deceased to his father and mother, his obliga-
tion to support them, and their dependence upon him for
the same, does not appear to have been improper. *Johnson
v. Mo. Pac. R. Co.* 18 Neb. 699; *Lowe v. C., St. P., M. &
O. R. Co.* (Iowa) 56 N. W. Rep. 519; *Ewen v. C. & N. W.
R. Co.* 38 Wis. 615; *Potter v. C. & N. W. R. Co.* 22 Wis.
615.

4. The damages, reduced by the court to $4,000, we do
not think excessive. Great reliance ought to be put in the
judgment and discretion of the trial court, specially exer-
cised in reducing the amount of the damages found by the
jury.

5. This is so plain a case upon the evidence, we do not
think it was necessary for the court to give the instructions
asked by the appellant, or to give any further instructions
than were given, and they appear to have been sufficient
and correct.

*By the Court.*— The judgment of the superior court is af-
firmed.