## GOULLON v. FORD MOTOR CO.
### No. 5418.

Circuit Court of Appeals, Sixth Circuit.
Nov. 5, 1930.

Ernest Woodward, of Louisville, Ky. (John Irick, John Marshall, Jr., and Woodward, Hamilton & Hobson, all of Louisville, Ky., on the brief), for appellant.

Stanley Newhall, of Louisville, Ky. (W. W. Downing, of Louisville, Ky., and Longley & Middleton and E. E. Juntunen, all of Detroit, Mich., on the brief), for appellee.

Before DENISON and MOORMAN, Circuit Judges, and ANDERSON, District Judge.

DENISON, Circuit Judge.

Goullon, the plaintiff below, purchased a Ford tractor from a dealer. While driving the tractor backward and twisting about in his seat, the rim of the steering wheel broke in his hand, he fell from his seat, and was run over and injured. Depending upon diverse citizenship to give the court below jurisdiction, he brought this action to recover for his injuries, upon the theory that the steering wheel was so defective that the defendant manufacturer was liable to him. The trial court directed a verdict against the plaintiff.

The opinion of the New York Court of Appeals, in MacPherson v. Buick Co., 217 N. Y. 382, 111 N. E. 1050, 1053, Ann. Cas. 1916C, 440, L. R. A. 1916F, 696, states the rule which has been repeatedly followed and has now become the generally accepted law. As applied to the relations existing between a manufacturer of an automobile and a purchaser from an intermediate dealer, it is said:

"If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty [to the other person using] to make it carefully." We see no substantial distinction, in the respect now involved, between an automobile running wheel and a tractor steering wheel. The speed of the automobile is perhaps an essential element in creating peril to life and limb if the running wheel breaks; but, if the fairly probable result of the steering wheel collapse is that the driver may lose his seat, fall, and be run over by the tractor, or its attachments, the speed of its driving ceases to be of controlling importance. We think it clear from the evidence in this case, and from common knowledge, that such a fall is the reasonably probable result of such a break. The driver occupies a seat which has no side support, and is surrounded by no cab or other protection. In the ordinary operation of the machine, he could not safely keep his seat, excepting as he supports himself by the steering wheel. In thus maintaining his position against the unsteadiness of the seat, as well as in the necessary steering, he exerts a side pressure against the wheel, and, if the wheel gives way, there is substantial probability that he will lose his balance and fall. If he is twisted about in the seat, as is known to be necessary in driving backward, this probability is increased.

■ There was evidence that Goullon was using his left foot to operate the clutch instead of using his right foot, as would be the normal method. He says he was doing this because it was the more convenient method under such circumstances, and because it was a not unusual or improper method of operation. We think that, at the best for defendant, it was a question for the jury, whether Goullon's method of operating in this particular was negligence which so contributed to the result as to be a proximate cause thereof.

■ We conclude, therefore, the jury might rightly have found that, if this steering wheel was so defective that it might break under the strain of use which the manufacturer should reasonably expect, the defect was of the character reasonably certain to place life and limb in peril. Injury would not be certain; but serious peril to life or limb was sure; and the latter, not the former, is the criterion. We come then to the question whether there was substantial evidence of such negligence in the manufacture.

■ Steering wheels for automobiles, including tractors, commonly comprised a spider, consisting of metallic arms, attached to and diverging from the steering column, and a circular rim connecting the outer ends of the spider arms. They were sometimes made with integral metallic spider and rim; sometimes a wooden rim was attached to the spider; and sometimes a metallic rim, firmly attached to the spider, was covered or sheathed with wood or with some rubber or fiber composition. Defendant, in its tractor, was the first one, and it is said the only one, to depart from these methods and to construct its rim entirely of a rubber and fiber composition, using no central metallic frame or reinforcement, and attaching the composition rim directly to the four spider arm ends by screws passing from the spider arms into the body of the rim, at these four points. This composition gave the rim certain good qualities, and defendant conducted tests which satisfied it that the material was suitable and would make a safe wheel rim; but we think there was sufficient evidence to go to the jury upon the issue whether, by this method of manufacture, a reasonably safe rim resulted. The fact that this rim, under an ordinary strain, did break and that no completely satisfactory reason for the break appears, unless the material was inherently unsuitable, is not of itself sufficient; but it challenges attention, and is a circumstance to be considered along with others. Tests made of the rim showed a tensile strength relatively small as compared with wood or metal, "about the same as in the ordinary battery box"; and indicated that it would break under strain less severe than it seemingly might get from the sudden effort of a heavy man to save himself from falling. An expert fixed its tensile strength at 1800, while safety, he says, required 3000. The most apparent lack of safety is found in the view that, even though there might be no substantial danger of breaking if the attaching screws remained firm at all four points, yet, if one of these screws became loose, the leverage which would then be exerted at the next point of attachment would be greatly increased, and imminent danger of breaking would follow. This is probably what did happen, as the attaching screws at one point were found to be loose. There was evidence from which, put with common knowledge, it may reasonably be inferred that, while a screw thread of

metal against metal may be forced into such tight contact as to be very permanent, and, while a screw thread entering wood would be so gripped by the elasticity of the wood that it would tend to be locked into position, yet that these results do not follow when the screw thread is forced into such a composition as this, which has neither the strength of the metal nor the elasticity of the wood, and is not inherently suitable for a screw grip which is to be permanently maintained against a constant and severe vibration, particularly not by the small thread here found. This was not distinctly developed by the testimony, but it seems implicit therein, and in the expert's general conclusion that the design and materials made the wheel unsafe. The parts of the broken rim, exhibits before the jury and sent up to this court, may be thought to confirm this view.

Nor can it be said to be clear beyond dispute that the loosening of the screw enough to make the rim dangerous to use must be so obvious as to make the user himself responsible for the danger which might have been avoided by tightening the screw, if he had observed its looseness.

Upon the theory thus stated, we think there was a case sufficient to go to the jury. The case upon the facts is plainly distinguishable from Davlin v. Ford (C. C. A. 6) 20 F. (2d) 317.

There was evidence indicating that part of the break in the rim was old, and it was claimed that this sufficiently indicated negligence in the manufacture. We would not be willing to rest the submission upon that theory, for there would be too much uncertainty as to the age of the partial break and as to whether its existence involved negligence in the manufacture or in inspection.

For the reasons stated, the judgment is reversed, and the case remanded for a new trial.