**BORG–WARNER CORPORATION (NORGE DIVISION) v. HEINE.**

**No. 8832.**

Circuit Court of Appeals, Sixth Circuit.

June 6, 1942.

Fred L. Vandeveer, of Detroit, Mich. (Vandeveer & Haggerty, of Detroit, Mich., on the brief), for appellant.

J. H. Spencer, of Detroit, Mich. (Dykema, Jones & Wheat, of Detroit, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

Suit for damages for personal injuries, with verdict and judgment for appellee. Appellant complains, (1) of the denial of a motion for a directed verdict; (2) of errors in the charge; (3) of the denial of the motion for judgment non obstante veredicto; and (4) of the denial of a motion for a new trial.

A. Centoni purchased an electric refrigerator from the Malcolm Brock Company, a department store in Bakersfield, Calif. The refrigerator, a Norge model, was shipped by appellant, the manufacturer, to the Leo J. Meyberg Company, its distributor at San Francisco, whence it was obtained by the Malcolm Brock Company, removed to its store in Bakersfield, unpacked and without checking or testing, delivered to the Centoni home and put into operation.

Its normal working operation was about as follows: The refrigerant, sulphur dioxide, was stored in liquid form in a supply tank located in the bottom of the box. From there it went up through a single tube to a manifold in the center and at the top of the box. From this manifold the tube branched in two lines, going to cooling devices on each side of the box at the top, each consisting of two separate evaporators, one of low temperature for the freezing compartment, and one of high temperature for the box proper. Needle valves of the float type located at the points where the refrigerant was fed into the evaporators, regulated the flow. As the refrigerant filled an evaporator, a float automatically shut off the intake. In the evaporators the refrigerant "boiled," that is, turned into vapor, absorbing heat. The vapor was then drawn from the evaporators through suction lines which led back to the manifold, one line from the low temperature and the other from the high temperature evaporators. From the manifold two suction lines carried the vapor down to the compressor, one line carrying it from the low and the other from the high temperature evaporators. The compressor or "rollator," compressed the vapor into liquid again, which passed into the supply tank, where the cycle of refrigeration began again. The compressor was run by an electric motor connected by a plug to a wall socket.

Shortly after its delivery and installation, Centoni complained to the Malcolm Brock Company that the refrigerator was not operating properly. Thereupon Mr. Brock sent appellee to the Centoni home to examine it. Appellee had been employed by the Malcolm Brock Company, as a refrigerator service man, for about a year and a half and had had about nine years' experience as such service man. A careful and thorough examination revealed that the high temperature evaporator on the right side was not frosting properly and appellee concluded that the refrigerant was not feeding to the right-hand high temperature evaporator and that there was some sort of restriction at the needle valve. After this examination Centoni complained to the wholesale distributors, the Leo J. Meyberg Company, which suggested by letter, to the Malcolm Brock Company, that a service man replace the affected needle valve, stating that it believed that the trouble was either in an obstructed line or a stuck valve. This letter was shown to appellee.

On June 25th appellee went to the Centoni home for the purpose of repairing or adjusting the refrigerator. It was then in operation and appellee withdrew it from service by pulling the plug from the wall socket. He then began to disassemble it. In the process, he undertook to remove the needle valve with a special wrench designed for that purpose. As he turned the valve to its last thread, a burst of gas struck him in the face and injured him. There was evidence tending to show that a suction line designed to pull the gas down from the right evaporator was closed or partially closed by solder; and that the gas thus restrained forcibly escaped through the needle valve opening.

Such are the undisputed facts.

What is the applicable law?

■ The general rule is that the manufacturer of an article is not liable to third parties, who have no contractual relations with him, for negligence in the construction of the article. The proposition is elementary and needs no citation of authority to support it. Its soundness is conceded. There are, however, exceptions to this general rule,— one being that an act of negligence of a manufacturer imminently dangerous to life or health and committed in the preparation of an article intended to preserve, destroy or affect human health, is actionable by third parties who suffer from the negligence. See Huset v. J. I. Case Threshing Mach. Co., 8 Cir., 120 F. 865, 870, 61 L.R.A. 303. This exception has been extended to include manufactured articles which in their normal operation are implements of danger if they are negligently made. The leading case supporting this exception is MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L. R.A.1916F, 696, Ann.Cas.1916C, 440.

Appellee relies chiefly upon the MacPherson case. MacPherson bought an automobile from a reliable dealer and while riding in it was thrown out and injured because one of its wheels, made of defective wood, suddenly collapsed. He was awarded a recovery against the manufacturer and the judgment was affirmed. The court said, at page 390 of 217 N.Y., at page 1053 of 111 N. E.: "Beyond all question, the nature of an automobile gives warning of probable danger if its construction is defective. This automobile was designed to go 50 miles an hour. Unless its wheels were sound and strong, injury was almost certain. It was as much a thing of danger as a defective engine for a railroad. The defendant knew

the danger. It knew also that the car would be used by persons other than the buyer."

The MacPherson case is now the generally accepted law. We followed it in Goullon v. Ford Motor Co., 6 Cir., 44 F.2d 310, wherein the driver of a tractor was injured because its steering wheel broke, and also in Barrett Co. v. Bobal, Adm'r, 6 Cir., 74 F.2d 406, wherein a workman was killed by the explosion of a tank used to heat a coal tar product designed for use on highways. The tank was furnished to the employer by the maker of the product and the explosion was caused by a defective safety valve.

However, we do not think that the MacPherson case is applicable here. A refrigerator is not "essentially" a dangerous thing. It is not anticipated that it will do injury. See Standard Oil Co. v. Murray, 7 Cir., 119 F. 572, 575. It is not dangerous "per se." Amason v. Ford Motor Co., 5 Cir., 80 F.2d 265. It is not "imminently" dangerous like the camphor solution in Hruska v. Parke, Davis & Co., 8 Cir., 6 F.2d 536. It is not "imminently and necessarily" dangerous, as was averred of an iron covering over a rapidly revolving cylinder with projecting teeth or spikes, in Lynch v. International Harvester Co., 10 Cir., 60 F.2d 223, 224. It is not "in its nature hazardous." See Bragdon v. Perkins-Campbell Co., 3 Cir., 87 F. 109, 113, 66 L.R.A. 924. It is not an "inherently dangerous" thing like the cylinder for holding gases, involved in Keep v. National Tube Co., C.C., 154 F. 121.

We must assume that the refrigerator was defectively constructed in that the solder wholly or partially restricted the flow of gas through the tube, but even so, it gave no warning that it would be dangerous in its normal use. Schfranek v. Benjamin Moore & Co., D.C., 54 F.2d 76; and was not dangerous in its use as a refrigerator. It was not dangerous at all until appellee pulled the needle valve. There is no evidence that appellant knew of the defect. As was said in the MacPherson case, there must be knowledge of a probable danger. In the absence of such knowledge, appellant could not reasonably foresee danger from a service man pulling the needle valve.

We think that upon the undisputed facts the case falls with the general rule rather than the exception and we find nothing in California law contrary to this conclusion. We need not inquire as to what appellant would have discovered by a proper inspection of the refrigerator before it left the factory. That question is not before us in this case. We do not find it necessary to examine critically the complaints made of the court's charge or to discuss the questions of assumptions of risk or contributory negligence. We think that appellant was entitled to a directed verdict, which was denied. We think that it was also entitled to judgment, notwithstanding the verdict.

The judgment will be reversed and the case remanded with directions to dismiss it.

HAMILTON, Circuit Judge (dissenting).

In my opinion the judgment should be affirmed. The ultimate facts appearing in the record support a finding by the jury that it was the duty of appellant to furnish a refrigerator with a safe tube for the drainage of the sulphur dioxide refrigerant if such drainage became necessary for the operation of the refrigerator or for its proper repair.

The ultimate facts also support a finding that sulphur dioxide, when vaporized and retained under pressure, is a dangerous explosive to persons in its immediate vicinity when suddenly released.

Viewing the facts most favorably to appellee, it is clear that the jury was justified in finding that appellant impliedly represented that the sulphur dioxide could be safely drained from the refrigerator for the purpose of repairing it and that appellant knew, or by the exercise of ordinary care could have known, that because of concealed defects in the drainage line it was dangerous to a person using the appliances on the refrigerator for drainage of the refrigerant.

It is well settled that a manufacturer who delivers an article, which by the exercise of ordinary care he should know to be dangerous to another person, without notice of its nature and qualities is liable for any injury which may reasonably be contemplated as likely to result, and which does in fact result, to that person or any other who is not himself at fault. Lewis v. Terry, 111 Cal. 39, 43 P. 398, 31 L.R.A. 220, 52 Am.St.Rep. 146; Devlin v. Smith, 89 N.Y. 470, 42 Am. Rep. 311; McLeod v. Linde Air Products Company, 318 Mo. 397, 1 S.W.2d 122, 123; Restatement of the Law of Torts, Sections 394 to 398 inclusive.

In my opinion the majority is clearly wrong in concluding as a matter of law that appellant was free from fault and owed no duty to appellee on the theory that a refrigerator or its refrigerant is in no sense a dangerous instrumentality.