## SCHINDLEY v. ALLEN-SHERMAN-HOFF CO.

### No. 10217.

Circuit Court of Appeals, Sixth Circuit.

Aug. 26, 1946.

Don J. Young, Jr., of Norwalk, Ohio (Don J. Young, Jr., of Norwalk, Ohio, of counsel; Young & Young, of Norwalk, Ohio, on the brief), for appellant.

W. K. Sullivan and Thos. E. Lipscomb, both of Cleveland, Ohio (Thompson, Hine & Flory and Thomas E. Lipscomb, all of Cleveland, Ohio, and Mancill, Cooney, Ott & Semans and Lambert Ott, Jr., all of Philadelphia, Pa., on the brief), for appellee.

Before HICKS, ALLEN, and MARTIN, Circuit Judges

HICKS, Circuit Judge.

Suit for damages for personal injuries. Appellant complains of a directed verdict in favor of appellee.

Appellee, The Allen-Sherman-Hoff Company, has for many years manufactured equipment for use in connection with large boilers in both municipal and industrial power plants. It contracted with the City of Norwalk, Ohio, to fabricate and install for it an ash hopper and an ash gate in the light and water plant of that city. It completed the installation in February, 1940, and the gate was in continuous use from that time until May 13, 1943, the date of appellant's injury. During this period appellee manufactured and installed about 2000 of these gates in power plants throughout the country. It had a system of checking through its field representatives upon the equipment manufactured by it and no

complaint had ever been made to it of any defect in the gate here involved, **or of** irregularity in its operation.

The gate itself is of metal construction and weighs about 12,000 pounds. It rests and moves upon a frame attached to the bottom of the ash hopper. The gate, resting horizontally, is moved by rollers in grooves attached to the frame. The bottom of the gate is about four feet above the level of the basement floor. A metal car underneath the gate receives the ashes from the hopper when the gate is opened. The gate is opened by a pinion gear and rack. The rack consists of a plate containing a row of gear teeth and attached to the bottom of the gate. The pinion gear is attached to the end of an axle and the teeth thereof mesh with those of the rack. When the teeth are meshed and the pinion gears move, the gate is necessarily moved; and opens or closes with the movement of the pinion. The pinion gear is operated by means of a removable ratchet wrench, with a handle 36 inches long which is fitted to the end of the axle to which the pinion gear is attached.

To open the gate, the operator, standing by its side, pushes the handle downwardly. When the handle is moved in an arc of about 60 degrees, the gate opens 2½ inches. This pumping motion is repeated until the gate sufficiently opens to allow the ashes to fall from the hopper. To prevent the teeth on the rack from becoming unmeshed with the teeth of the pinion gear, and thus allowing the gate to fall, there is a stopping arrangement which consists of metal lugs cast integrally on each side of the frame of the gate and metal lugs projecting at right angles from each side of the frame of the hopper to engage them. In normal operations, when the handle is pushed downwardly, the gate rolls forward horizontally until the lugs meet and stop its movement.

On the occasion of the accident, the gate did not stop, but moved forward until the gears of the rack became unmeshed with the gears of the pinion.

Appellant, a fireman's helper, was an employee of the city and one of his duties was to empty the hopper and this necessi-tated opening the gate by downward pressure on the handle. He attempted to close it by a reverse motion of the handle. It would not close, because it had moved so far beyond the stop that the teeth of the rack would not engage the teeth of the pinion; whereupon appellant went around to the front of the gate and undertook to force it back into engagement, when it fell upon and injured his left leg and ankle.

It is manifest that the stopping arrangement had not functioned. On the previous day it had failed and appellant had pushed the gate back into place. These were the first failures in the stopping mechanism, although the gate had been in operation continuously, day and night, for more than three years.

An examination disclosed that the lugs on the frame had become bent outwardly until they would not engage the lugs on the gate and stop its forward movement.

■ The gist of appellant's complaint is, that appellee, the manufacturer, was negligent in furnishing insufficient, inoperative and defective stops.

In Borg-Warner Corporation v. Heine, 6 Cir., 128 F.2d 657, 658, we stated the law to be:

"The general rule is that the manufacturer of an article is not liable to third parties, who have no contractual relations with him, for negligence in the construction of the article. The proposition is elementary and needs no citation of authority to support it. Its soundness is conceded. There are, however, exceptions to this general rule,—one being that an act of negligence of a manufacturer imminently dangerous to life or health and committed in the preparation of an article intended to preserve, destroy or affect human health, is actionable by third parties who suffer from the negligence. See Huset v. J. I. Case Threshing Mach. Co., 8 Cir., 120 F. 865, 870, 61 L.R.A. 303. This exception has been extended to include manufactured articles which in their normal operation are implements of danger if they are negligently made. The leading case supporting this exception is MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440."

We think that appellant's case falls under the general rule rather than under any of its exceptions. There is no evidence that the stopping arrangement was "imminently dangerous" at the time it was fabricated and installed. At that time it was not "essentially," "per se" or "necessarily" a dangerous instrumentality. It was not "in its nature hazardous" or "inherently dangerous." See the cases cited in the Borg-Warner opinion, supra, 128 F.2d at page 659.

In Lynch v. International Harvester Co., 10 Cir., 60 F.2d 223, 224, Lynch, while working on a threshing machine stepped on an iron covering, which gave way and caused his foot and leg to be mangled by a rapidly moving cylinder underneath. He sued the manufacturer of the machine upon the ground that the covering as fabricated was defective and caused his fall, which occurred more than five years after the manufacturer had sold it. The court said:

"The most serious and obvious reason against appellant's right of recovery is the fact that the injury did not occur until after five years use of the machine, and during that time operators had stepped on and walked over the covering in safety, as the complaint expressly admits. These facts, it seems to us, are a conclusive denial and contradiction of the allegation that the machine was imminently dangerous to life and limb when defendant sold it."

Appellant's case aligns itself with the Lynch case. There is no evidence that when appellee installed the stops it had any cause to believe that they would fail to function and imperil life or limb, since it had installed more than 2000 of these Type "C" gates throughout the country and had never had a complaint that they were defective in design or irregular in operation.

The case differentiates itself from the leading case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440. While riding in an automobile which he had bought from a dealer, MacPherson was thrown out and injured because one of its wheels, made of defective wood, suddenly collapsed. He sued the manufacturer and was awarded a judgment, which was affirmed. The decision was correct because the manufacturer was held to know or should have known that a defective wheel on an automobile is dangerous to the lives and limbs of the occupants of the car. See also Goullon v. Ford Motor Co., 6 Cir., 44 F.2d 310.

Appellant introduced an expert who thought that the lugs on the frame should have been made strong enough to withstand a pressure of 80 pounds on the handle. His conclusion was based upon the assumption that a pressure of 80 pounds upon the wrench or handle caused the lugs to bend out of position when struck by the lugs on the gate, but this assumption has no basis in fact to support it. Inferences must be based upon proof and not upon unwarranted assumptions. There is no evidence that the lugs upon any of the 2000 gates, including the one here involved, were ever bent out of position by excessive pressure on the wrench. There is nothing in the record from which it could be inferred that appellee might have anticipated the necessity of making the lugs strong enough to resist a pressure of more than 25 pounds. The lugs on all the stopping attachments fabricated by appellee were designed to resist a pressure of not more than 25 pounds because nothing had occurred to indicate that the pressure should exceed that weight. The testimony of the expert has no substantial probative force.

It is unnecessary to discuss the point raised by appellee that appellant's injury was caused by his contributory negligence in undertaking to shove the gate back so that the teeth of the rack would mesh with the teeth of the pinion. We simply say that as a matter of law appellee was guilty of no negligence in designing and installing the stop attachments. It could not reasonably have anticipated danger therefrom.

We find nothing in Ohio law contrary to our conclusion; in fact, it has substantial support in the case of Breck v. Rollaway Motor Co., 23 Ohio App. 79, 155 N.E. 147.

Affirmed.